DEPARTMENT OF INCOME MAINTENANCE *v.* DANIEL M. WATTS, CONSERVATOR (ESTATE OF PATRICIA WATTS) (13585)

PETERS, C. J., SHEA, CALLAHAN, COVELLO and HULL, Js.

Argued March 8—decision released May 30, 1989

*Jacob J. Goldman,* assistant attorney general, with whom, on the brief, were *Clarine Nardi Riddle,* acting attorney general, and *Joseph I. Lieberman,* former attorney general, for the appellant (plaintiff).

*Keith Bradoc Gallant,* for the appellee (defendant).

SHEA, J. The issue in this case is whether the Probate Court may properly approve, pursuant to General Statutes § 45-300 (b),[1] the disclaimer, by a conservator of an incapable person receiving state assistance, of his ward's interest in a testamentary trust, in view of the prohibition in General Statutes (Rev. to 1987) § 17-82j against dispositions of the property of state aid recipients.

Patricia Watts, ward of the defendant conservator, is a remainder beneficiary of a testamentary trust created under the will of her grandmother, who died in 1950. The life beneficiary of the trust, Patricia's father, died on July 20, 1985. The remaindermen, Patricia and her three brothers, were then each entitled to receive approximately $80,000 as one quarter of the corpus of the trust.

---

[1] General Statutes § 45-300 (b) provides: "A guardian of the estate, conservator of the estate, executor, administrator or other personal representative of the estate of a minor, incapable person, or decedent, or the trustee of a testamentary trust, if such fiduciary deems it in the best interests of those interested in the estate of such person or such trust and not detrimental to the interests of such minor, incapable person, decedent's estate or such trust, with the approval of the probate court having jurisdiction over such minor's, incapable person's or decedent's estate or such trust, may disclaim on behalf of such estate or such trust within the same time and in the same manner as could a capable person."

At the time of her father's death, Patricia, as a result of a traumatic brain injury, was residing in a group home for the retarded and handicapped and was being supported through federal Medicaid and state disability assistance. 42 U.S.C. §§ 1396 through 1396k; General Statutes (Rev. to 1987) §§ 17-109, 17-111. She has received approximately $10,000 in Medicaid assistance and approximately $43,000 in disability assistance.

After the death of Patricia's father, the life tenant, her conservator applied to the Probate Court pursuant to General Statutes § 45-300 (b) for permission to disclaim his ward's right to receive any portion of her interest as a remainderman. The conservator proposed that a spendthrift trust be created from those funds that Patricia would have received and that the proceeds from the spendthrift trust be used to supplement her medical care and personal needs. The Probate Court approved the disclaimer and permitted the establishment of such a spendthrift trust.

The state appealed to the Superior Court, claiming that the disclaimer is barred by § 17-82j. Section 17-82j provides that, without the consent of the commissioner of income maintenance, one may not dispose of any property obtained while receiving public assistance payments. Both parties moved for summary judgment. The trial court noted that under § 45-300 (e), "[a] disclaimer shall relate back for all purposes to the date of death of the decedent or of the donee." The court reasoned, therefore, that because, in 1950, § 17-82j had not yet been enacted and the ward was not then receiving federal and state assistance, the common law of disclaimers, rather than § 17-82j, should control, and the disclaimer should be approved. Accordingly, the court granted the conservator's motion for summary judgment. This appeal followed.

## I

We first consider whether the state had standing to appeal from the decision of the Probate Court. General Statutes § 45-288 provides that any person aggrieved by any order or decree of a Probate Court may appeal therefrom to the Superior Court. See *Lenge v. Goldfarb,* 169 Conn. 218, 220, 363 A.2d 110 (1975). In determining whether a party is aggrieved, the test is whether there is a possibility, as distinguished from a certainty, that some legally protected interest that he has in the estate has been adversely affected. *Williams* v. *Houck,* 143 Conn. 433, 438, 123 A.2d 177 (1956); *O'Leary* v. *McGuinness,* 140 Conn. 80, 83, 98 A.2d 660 (1953). The qualifying interest may be a direct pecuniary one, or it may consist of an injurious effect upon some legally protected right or status of the appellant. *Maloney* v. *Taplin,* 154 Conn. 247, 250, 224 A.2d 731 (1966). Thus, we examine first the nature of the state's interest in Patricia's estate, and second, the adverse effect on that interest of the Probate Court's decision. *Baskin's Appeal from Probate,* 194 Conn. 635, 638, 484 A.2d 934 (1984); *Hartford Kosher Caterers, Inc.* v. *Gazda,* 165 Conn. 478, 485, 338 A.2d 497 (1973).

The conservator maintains that the state has not demonstrated that it has "sustained an injury to a specifically protected legal right," and, therefore, that it cannot establish aggrievement. The conservator's claim is wholly without merit, however, because it assumes that the state has no right to seek reimbursement for funds disbursed on behalf of the ward. Cf. *Commissioner of Finance & Control* v. *Whitfield,* 35 Conn. Sup. 622, 624, 403 A.2d 709 (1978). General Statutes § 17-83e, for example, furnishes the state with a mechanism for asserting such a right. Section 17-83e provides in part that "[i]f a beneficiary of aid under this chapter has or acquired property of any kind or inter-

est in any property, estate or claim of any kind, the state of Connecticut shall have a claim . . . against such beneficiary for the full amount paid . . . to him or in his behalf under said chapter." The record discloses that if the disclaimer had been disallowed by the Probate Court, the ward would have received approximately $80,000, her one-fourth interest in the corpus of the trust. The state undoubtedly would have claimed an entitlement to some portion of that money and would have reassessed the ward's eligibility for assistance under title XIX and state disability guidelines. We need not determine, of course, whether the state would prevail on a claim brought pursuant to § 17-83e, because, as stated earlier, the question for establishing aggrievement is whether there is some *possibility* that a protected interest has been adversely affected. *Williams* v. *Houck,* supra. Nonetheless, the apparent effect of the disclaimer in the present case is that the ward will not have any assets that can be reached for reimbursement, and the state's possible claim under § 17-83e will be thwarted. We conclude, therefore, that the possible adverse effect on the state's right to seek reimbursement under § 17-83e is sufficient to establish aggrievement in this case.

## II

The state maintains that the conservator's attempt to disclaim is barred by General Statutes (Rev. to 1987) § 17-82j, which provides in part: "If any person receiving an award . . . under this chapter . . . receives property, wages, income or resources of any kind, such person or beneficiary, within fifteen days after obtaining knowledge of or receiving such property, wages, income or resources, shall notify the commissioner thereof in writing. No such person or beneficiary shall sell, assign, transfer, encumber, or otherwise dispose of any property without the consent of the commissioner." The conservator, on the other hand, points out

that, by the terms of § 45-300 (e), "[a] disclaimer shall relate back for all purposes to the date of death of the decedent or of the donee." The conservator reasons, therefore, as did the trial court, that because, in 1950, § 17-82j had not yet been enacted and the ward was not then receiving federal and state assistance, § 17-82j is inapplicable and the disclaimer was properly approved by the Probate Court.

In resolving the conflict between these two statutes, we are guided by the principle of statutory construction that statutes in apparent conflict should be construed so as to achieve harmony between them. *Groppo* v. *Jacks*, 210 Conn. 277, 281, 554 A.2d 1061 (1989). The two statutes must be construed, if possible, so that both will be operative. *State* v. *Tyson*, 195 Conn. 326, 331, 487 A.2d 1091 (1985).

In *State* v. *Murtha*, 179 Conn. 463, 427 A.2d 807 (1980), this court had occasion to resolve the same conflict that is presented in this case. In *Murtha*, the state sought a judgment determining whether the defendant Vera Sullivan's disclaimer of her interest in the residue of her sister's estate was valid in light of the state's claims against Sullivan for the medical assistance that she had received or was receiving under title XIX of the Social Security Act, 42 U.S.C. §§ 1396 through 1396k.[2] The state maintained that the disclaimer was

---

[2] In *State* v. *Murtha*, 179 Conn. 463, 427 A.2d 807 (1980), the defendant, who was receiving state assistance, was not an incapable person and was legally competent to execute a disclaimer, as she had done, without court approval. The state obtained a declaratory judgment that the disclaimer was, nevertheless, invalid because of the defendant's status as a state aid recipient whose eligibility was subject to reassessment.

The issue before us in the present case is whether the Probate Court's approval of the conservator's proposed disclaimer should be affirmed. Because we conclude that such a disclaimer is barred by General Statutes § 17-82j when the ward is receiving state assistance, we need not consider whether, in the absence of such a statutory restriction, the proposed disclaimer would otherwise satisfy the standards established by General Statutes § 45-300 (b) for approval of such a disclaimer.

barred by § 17-82j. The defendant contended that the language of the statute, that a "disclaimer shall relate back for all purposes to the date of death of the decedent," should be given effect "so that Sullivan cannot be deemed to have received property [that] required her to notify the state under § 17-82j." Id., 466.

We held in *Murtha*, as we do in the present case, that the language of the disclaimer statute "must be considered as operative only when there is no bar to the disclaimer such as exists in § 17-82j." Id., 467. Such a construction gives effect to both statutes because it first determines, pursuant to § 17-82j, whether a valid disclaimer exists, and second, pursuant to § 45-300 (e), it specifies the consequences of such a disclaimer, if it is valid. "The propriety of this construction of the two statutes is underscored by the enactment of § 45-303 which lists a number of actions by a beneficiary [that] would serve to bar a right to disclaim. There is no intimation in § 45-303 that the actions described [therein] form an exclusive list of the circumstances barring a disclaimer." Id., 467. Accordingly, we conclude that § 17-82j provides a bar to disclaimers that is separate and distinct from those found in § 45-303.

The conservator contends, however, that through the enactment of Public Acts 1981, No. 81-396, the legislature intended to overrule our holding in *State* v. *Murtha,* supra, by ushering in a new, more liberal, approach to disclaimers. The conservator emphasizes two aspects of the public act. First, he notes that the public act added the statement, now found in General Statutes § 45-299 (a), that "[t]he provisions of this chapter shall be liberally construed to promote its underlying purpose and policy of readily permitting the disclaimer of interests." Second, he emphasizes that Public Acts 1981, No. 81-396 changed the treatment under General Statutes § 45-312 of disclaimed interests for succession tax purposes.

With respect to the conservator's first claim, we agree that § 45-299 (a) now expresses a liberal policy favoring disclaimers. That policy, however, does not require this court to construe § 17-82j out of existence. Unless the statutory language expressly requires such a result, we cannot attribute to the General Assembly an intent to produce an unworkable statute. *Schieffelin & Co.* v. *Department of Liquor Control,* 194 Conn. 165, 176, 479 A.2d 1191 (1984).

As to his second claim, we said in *State* v. *Murtha,* supra, 467, in further support of our holding that § 45-303 is not an exclusive list of bars to disclaimers, that "§ 45-312, another provision in chapter 798, 'Disclaimer of Estate Property,' bars disclaimers from thwarting the collection of succession taxes." We assume, without deciding, that the amendment to § 45-312 effectuated by Public Acts 1981, No. 81-396 mandates a different treatment of disclaimed interests for succession tax purposes. The conservator suggests that, as a result of this change, the foundation of our holding that § 45-303 is not an exclusive list of the bars to disclaimers has been washed away. There is no evidence whatsoever, however, in either the language of Public Acts 1981, No. 81-396 or in its legislative history, that when the legislature amended § 45-312 in 1981, it intended to alter our holding in *State* v. *Murtha* that § 45-303 is not an exhaustive list of the circumstances that bar a disclaimer. Accordingly, we reaffirm our conclusion in *State* v. *Murtha,* supra, that § 17-82j is an independent bar to disclaimers, and we hold that the Probate Court erred in approving the conservator's disclaimer in the present case.[3]

---

[3] General Statutes § 17-83m provides in part that "[i]n the event that any person applying for or receiving assistance under this chapter has any right to rescind, revoke, avoid or otherwise set aside any assignment, transfer or other disposition of property, the state shall be subrogated to such right." We need not discuss the import of this provision, because General Statutes § 17-82j disposes of the issue before us.

There is error, the judgment is set aside and the case is remanded to the Superior Court with direction to render judgment sustaining the appeal.

In this opinion the other justices concurred.