JAMES S. ERISOTY'S APPEAL FROM PROBATE
(14002)

PETERS, C. J., SHEA, GLASS, HULL and BORDEN, Js.

Argued October 3—decision released November 27, 1990

*Frank P. Lockard,* for the appellant (plaintiff).

*Ellen Burns Landers,* for the appellee (Willie Edward Harrison).

*Richard C. Willard,* for the minor child.

HULL, J. The dispositive issue in this appeal is whether in a paternity action by an alleged biological father a presumed biological father ordered by the Probate Court to submit to a blood grouping test is aggrieved as a result of the order within the meaning of General Statutes § 45-288.[1] We conclude that since an order to submit to a blood grouping test may adversely affect one's legally protected interest in human dignity and privacy, a person is aggrieved by such an order. Accordingly, we reverse the judgment of the trial court.

The following facts are not in dispute. On October 29, 1987, Richard James Erisoty, the minor child, was born to Sarah Erisoty and James S. Erisoty, the plaintiff. Sarah Erisoty and the plaintiff had been married on August 26, 1978, and continued to be married until April 21, 1989. On January 17, 1989, Willie Edward Harrison filed an action for paternity as to the minor child in the Probate Court for the district of East Hartford pursuant to General Statutes § 46b-172a.[2] The claim was contested. On motion by Harrison, the Probate Court issued the following order on April 3, 1989: "[T]hat [Harrison], [the] husband of the mother and the minor child submit to blood grouping tests as soon as can be arranged and that the results thereof be made available to counsel for all parties in interest. All expenses of said testing shall be paid by [Harrison].

[1] General Statutes § 45-288 provides in pertinent part: "Any person aggrieved by any order, denial or decree of a court of probate in any matter, unless otherwise specially provided by law, may appeal therefrom to the superior court for the judicial district in which such court of probate is held."

[2] General Statutes § 46b-172a provides in pertinent part: "(a) Any person claiming to be the father of a child born out of wedlock may at any time but no later than sixty days after the date of notice under section 45-61d, file a claim for paternity with the court of probate for the district in which either the mother or the child resides, on forms provided by such court."

"Upon receipt of said results by all counsel of record, this Court shall schedule a supplemental hearing to allow counsel the opportunity to present further evidence solely with regard to said blood tests and solely in accordance with evidentiary law."

On May 3, 1989, the plaintiff, claiming to be aggrieved, appealed from this order to the Superior Court for the judicial district of Hartford-New Britain pursuant to § 45-288. The plaintiff alleged in his reasons of appeal that: (1) the birth certificate of Richard James Erisoty shows the mother's maiden name to be Sarah Ruth Wheeler and the father's name to be James Steven Erisoty; (2) both Sarah Erisoty and the plaintiff testified that at and around the presumed time of conception of Richard James Erisoty, there was physical access between them; (3) Sarah Erisoty and the plaintiff have acknowledged their parenthood of Richard James Erisoty; and (4) in the dissolution of marriage action between James Erisoty and Sarah Erisoty, the Superior Court found Richard James Erisoty to be the lawful issue of the parties. The salient grounds of the plaintiff's appeal were set forth as follows: (1) "The tests ordered by the Probate Court would not be determinative of the parentage of the plaintiff or [Harrison], and would be a useless imposition on the plaintiff and the child"; and (2) "[t]he Probate Court should not have granted standing to [Harrison] to challenge the legitimacy of said child, but should have dismissed his petition before entering the order appealed from."

On November 17, 1989, Harrison moved to dismiss the Superior Court action on the ground that the court lacked subject matter jurisdiction over the action, arguing that the plaintiff was not aggrieved by the order of the Probate Court since the order did not adversely affect his rights. Harrison also claimed that the order was not a final judgment from which an appeal might be taken. The court implicitly found that the order was

appealable, apart from any final judgment analysis, pursuant to the provisions of § 45-288, which provides for a right of appeal to "[a]ny person aggrieved *by any order,* denial or decree of a court of probate in any matter." (Emphasis added.) The court then considered the issue of aggrievement, relying primarily on the statement in *Maloney* v. *Taplin,* 154 Conn. 247, 250, 224 A.2d 731 (1966), that "[t]he qualifying interest [to establish aggrievement] may be a direct pecuniary one, or it may consist of an injurious effect upon some legally protected right or status of the appellant . . . ." The court found that the plaintiff had not at that point "been subjected to a decision having an adverse pecuniary effect upon him nor *ha[d] he had invaded any legally protected right or status* by the order of the court." (Emphasis added.) Thus, the court found no aggrievement and granted the motion to dismiss for lack of subject matter jurisdiction.

The plaintiff appealed the judgment to the Appellate Court. We subsequently transferred the case to this court pursuant to Practice Book § 4023.

The plaintiff has presented the following two issues in this appeal: (1) whether the trial court properly concluded that the order of the Probate Court requiring Harrison, the plaintiff and the minor child to submit to blood grouping tests did not affect a legally protected right or status of the plaintiff and that he was, therefore, not aggrieved by the order; and (2) whether the court properly concluded that the order was not a final judgment from which an appeal could be taken to the Superior Court.

Because the finality of the judgment, if that were indeed an issue, would implicate our subject matter jurisdiction, we first address the plaintiff's second issue. The plaintiff asserts that the trial court dismissed his appeal, in part, for lack of a final judgment. This asser-

tion is mistaken for two reasons. First, the ruling by the trial court was not adverse to the plaintiff in this respect, but rather in his favor. Although the trial court merely quoted that part of § 45-288 which gave a right to appeal to "[a]ny person aggrieved by *any order,* denial or decree of a court of probate in any matter" (emphasis in original), it is clear that the court, by then proceeding to consider aggrievement, implicitly found the disputed order to be properly appealable. Given the plain meaning of § 45-288, we do not see how the court could have ruled otherwise.

Second, the often thorny issue as to whether a judgment of the Superior Court is a final judgment for purposes of appeal; see General Statutes § 52-263 (final judgment required to prosecute appeal from the Superior Court); is not involved in an appeal from a judgment of a Probate Court. As the trial court implicitly recognized, since the right of appeal at issue is available under § 45-288 to "[a]ny person aggrieved by any order, denial or decree of a court of probate in any matter," the section does not require a final judgment.[3]

---

[3] Two Supreme Court cases have involved appeals of a court order requiring a defendant to submit to a blood test in a criminal case. In *State* v. *Acquin,* 177 Conn. 352, 416 A.2d 1209 (1979), the court granted the state's motion for an order directing the defendant to allow the taking of blood from his body. In a per curiam opinion we found error because the "nexus" required between the taking of the blood and the alleged criminal behavior was not clearly established. Id., 355. The issue of final judgment was not raised.

In *State* v. *Grotton,* 180 Conn. 290, 429 A.2d 871 (1980), we decided the final judgment issue not considered in *Acquin.* In *Grotton,* we granted the state's motion to dismiss the defendant's appeal from an order requiring the defendant to provide specimens of blood, saliva and urine. Id., 295-96. We held that such an order is a discovery order and that "orders relating to discovery do not constitute a final judgment and are not appealable . . . because their initial determination does not so conclude the rights of the appealing party that further proceedings cannot affect those rights." Id., 292. We stated that "[t]o the extent that our decision in *State* v. *Acquin* . . . indicates that an order to obtain nontestimonial evidence may be reviewed on direct appeal, we hereby confine that decision to its facts." Id., 293.

We are thus left with the sole issue of aggrievement. Before deciding this issue we point out what we are *not* deciding. This case comes to this court on appeal from the judgment of the Superior Court granting a motion to dismiss the plaintiff's appeal to that court from the order of the Probate Court. Because it is not an appeal of the merits of the Probate Court order, we do not herein determine the propriety of such an order.

We begin our inquiry with a succinct summary of the law on this subject. "In order to prosecute an appeal from a Probate Court, it is necessary that the plaintiff be aggrieved within the meaning of § 45-288. Aggrievement as a concept of standing is a practical and functional one designed to assure that only those with a genuine and legitimate interest can appeal an order of the Probate Court. '[T]he frequent statement that a plaintiff, to be aggrieved, must have a pecuniary interest; *Kerin* v. *Goldfarb,* [160 Conn. 463, 280 A.2d 143 (1971)]; *Williams* v. *Houck,* 143 Conn. 433, 437, 123 A.2d 177 [1956]; *Ciglar* v. *Finkelstone,* 142 Conn. 432, 434, 114 A.2d 925 [1955]; *Weidlich* v. *First National Bank & Trust Co.,* 139 Conn. 652, 656, 96 A.2d 547 [1953]; is too narrow to deal with the various types of cases presented by appeals from probate. See *O'Leary* v. *McGuinness,* 140 Conn. 80, 98 A.2d 660 [1953]; *Spencer's Appeal,* 122 Conn. 327, 332–33, 188 A. 881 [1937]; . . . 1 Locke & Kohn, . . . [Conn. Probate Practice] § 188.' *Hartford Kosher Caterers, Inc.* v. *Gazda,* 165 Conn. 478, 338 A.2d 497 [1973]. 'In determining whether an appellant has a grievance . . . the question is whether there is a possibility, as distinguished from a certainty, that some legally protected interest which he has in the estate has been adversely affected.' *O'Leary* v. *McGuinness,* [supra, 83]." *Gaucher* v. *Estate of Camp,* 167 Conn. 396, 400–401, 355 A.2d 303 (1974).

" 'The issue of whether [a party] was aggrieved under § 45-288 by the actions of the Probate Court is to be distinguished from the question of whether, on a review of the merits, it will prevail. To examine the present issue the two parts of aggrievement need to be considered: (1) the nature of the appellant's interest, and (2) the adverse effect, if any, of the Probate Court's decision on that interest.' *Hartford Kosher Caterers, Inc.* v. *Gazda,* [supra, 485]." *Baskin's Appeal from Probate,* 194 Conn. 635, 638, 484 A.2d 934 (1984).

The plaintiff argues that the order to submit to a blood grouping test adversely affects (1) his interest in the security of his person protected by the fourth amendment[4] to the United States constitution and the constitution of Connecticut, article first, § 7,[5] and (2) his presumptive parental status, and his parental rights protected by the fourteenth amendment[6] to the United States constitution. Harrison counters that the plaintiff has not yet been affected by the judgment of the Probate Court.

We dispose summarily of Harrison's argument that the plaintiff has not been aggrieved, because the blood taking has not yet occurred. As previously stated, the question of whether one has been aggrieved by an order of the Probate Court is whether there is a *possibility* that some legally protected interest which he has in the estate has been adversely affected. *O'Leary* v. *McGuinness,* supra, 83. Further, if Harrison's argument were

---

[4] The fourth amendment to the United States constitution provides in pertinent part: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ."

[5] The constitution of Connecticut, article first, § 7, provides in pertinent part: "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches or seizures . . . ."

[6] The fourteenth amendment to the United States constitution provides in pertinent part: "No State shall . . . deprive any person of life, liberty or property, without due process of law. . . ."

sound, no executory order of a Probate Court could ever be appealed since the claimed injury to the appellant's legally protected interest would have not yet occurred.

Although the plaintiff's claim does not concern legally protected interests that he has *in the estate;* see *O'Leary* v. *McGuinness,* supra, 83; we decline to interpret § 45-288 so narrowly as to limit its applicability solely to cases involving an adverse effect upon a direct interest in the probate estate. This court has held that "[w]hile one who bids upon the property of an estate offered for sale has no interest in the property itself, he does have an interest in the proceedings employed by the court to approve the sale. It may be that a party appealing from an order of a probate court often has an interest in the estate itself, as a distributee or a creditor. But [General Statutes] § 45-293 [requiring an appellant from probate to state his interest on the motion for appeal] does not require the interest involved to be solely one in the estate itself." *Merrimac Associates, Inc.* v. *DiSesa,* 180 Conn. 511, 517–18, 429 A.2d 967 (1980). Thus, a legally protected interest may derive from the administration of a probate estate. In the instant case, if the plaintiff has a legally protected interest in the proceedings employed by the Probate Court in administration of the minor child's estate, specifically in not having blood taken from his body, we conclude that this interest is a legally protected interest and, thus, a potential subject of aggrievement within the meaning of § 45-288.

The first legally protected interest that the plaintiff seeks to vindicate is the right to resist an intrusion into his body. The existence of such a legally protected interest is established by *Schmerber* v. *California,* 384 U.S. 757, 86 S. Ct. 1826, 16 L. Ed. 2d 908 (1966). In *Schmerber,* a police officer directed a physician to take a blood sample from the defendant, who had been

arrested for driving while intoxicated, over his objection. Id., 758. The United States Supreme Court held that "compulsory administration of a blood test . . . plainly involves the broadly conceived reach of a search and seizure under the Fourth Amendment." Id., 767. The court framed the question as whether the police were justified in requiring Schmerber to submit to the blood test, and whether the means and procedures employed in taking his blood respected relevant fourth amendment standards of reasonableness. Id., 768. The court found that these tests were met and affirmed Schmerber's conviction of the charge against him. In so doing, the court stated that "[t]he integrity of an individual's person is a cherished value of our society." Id., 772. This court buttressed this view strongly in *State* v. *Grotton,* 180 Conn. 290, 293, 429 A.2d 871 (1980), where we stated that "[a] blood test, the most intrusive of the procedures here involved, does not merely constitute an order of discovery; it also constitutes a search and seizure under the federal and state constitutions." See also *State* v. *Acquin,* 177 Conn. 352, 354, 416 A.2d 1209 (1979).

The underlying premise of these decisions is the principle that a person has interests in human dignity and privacy that are protected by the fourth amendment to the United States constitution; *Schmerber* v. *California,* supra, 769–70; *State* v. *Acquin,* supra, 355; and that these interests are adversely affected by an order to submit to a blood test. We conclude, therefore, that because the plaintiff's constitutionally protected interests in human dignity and privacy were adversely affected by the Probate Court order to submit to a blood grouping test, the plaintiff was aggrieved and could properly appeal the order pursuant to § 45-288.

This first strand of an adverse effect on a legally protected interest is to be found in the very act of puncturing the plaintiff's skin and drawing blood from his

body. Since impairment of this legally protected interest is sufficient to sustain the plaintiff's claim of aggrievement, we need not consider to what extent the possibility of adverse effects on his parental status and rights might also sustain his right to appeal the order of the Probate Court.

The judgment is reversed and the case is remanded to the trial court with direction to set aside the judgment of dismissal and to proceed with the case according to law.

In this opinion the other justices concurred.