[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a proceeding brought by the Department of Children and Families alleging that Dalene C., born on January 1, 1994, is "uncared for" as defined by General Statutes 46b-120 in that she "has specialized needs which cannot be met in her home." The petition further alleges that the mother of the child, Beatrice C., is fourteen years of age, committed to the Department of Children and Families and is uncooperative, out of control, and an unsuitable person to raise this child. The petition further alleges that Darrell S. is the father of the child. The petition is brought pursuant to 46b-129 of the General Statutes and is signed by a representative of the Commissioner of the Department of Children and Families. CT Page 1643
The petition was properly served on the parties who appeared for a plea hearing. On the date set for the plea hearing the petitioner, Rose Alma Senatore, Commissioner of the Department of Children and Families, filed a motion for blood grouping tests in accordance with 46b-168(a) and (b). At the plea hearing the putative father, Darrell S., acting through his attorney entered a pro forma plea of denial to the allegations contained in the petition and objected to the granting of the motion for blood grouping tests on the basis that the testing violated hisfifth amendment privilege, was unnecessarily intrusive, and further that the testing invaded his privacy interests.
It is important to recognize that the issue before the court relates only to the blood grouping tests and does not relate to the issues of whether the juvenile court is a proper forum to make a contested paternity adjudication or whether the respondent Darrell S. is a proper party (see46b-121 juvenile matters defined, authority of court, see also Motion to Dismiss PB Sec 143). It is important to note that the social study which accompanies the petition in this matter indicates that the putative father is twenty years of age, the mother of the child is fourteen years of age, and that the child, Dalene C., at the time of the hearing was approximately thirty days of age. The respondent, Darrell S., by his attorney indicated that he believed that his client was at risk for criminal prosecution due to the age of the respondent, Beatrice C., and the age of the respondent, Darrell S., at the time of conception of this child.
 A.
The first argument of the respondent putative father relates to a perceived protection by the Fifth Amendment to the United States Constitution. This defense to the motion fails in at least three respects. First, 46b-166 of the General Statutes appears to provide a limited form of immunity from prosecution. That section provides in part:
 "The putative father of any child for whom adjudication of paternity is sought in paternity proceedings shall not be excused from testifying because his evidence may tend CT Page 1644 to disgrace or incriminate him; nor shall he thereafter be prosecuted for any criminal act about which he testifies in connection with these proceedings or he makes any statement prior to such proceedings with respect to the issue of paternity."
Second, insofar as the respondent putative father believes that establishing his paternity through the use of blood or genetic testing would assist the State in proving a criminal case against him, that is, that he had committed sexual intercourse with the child's mother, those fears may be unwarranted. In Moore v. McNamara,201 Conn. 16 (1986), the Supreme Court indicated that the use of HLA and blood grouping tests, which indicated that the likelihood of the defendant's paternity was 99.6%, and which testing assumes sexual intercourse, could not be used in proving sexual intercourse. Moore v. McNamara, supra, page 33.
The third reason that the respondent's fifth amendment argument must fail is predicated upon the holding of the United States Supreme Court in Schmerber v. California,384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) and in Estelle v. Smith, 451 U.S. 454, 463, 101 S.Ct. 1866, 68 L.Ed.2d 359
(1981). In the Estelle case the court held that thefifth amendment is not violated where the evidence given by a defendant is neither related to some communicative act nor used for the testimonial content of what was said. Estelle v. Smith Id. 463. In Schmerber v. California the issue specifically related to a blood test to determine intoxication. The Supreme Court held that the accused privilege against self-incrimination under the fifth andfourteenth amendments were not implicated. The rationale of the determination was that blood testing evidence obtained for use in a criminal case is neither testimonial nor evidence of a communicative act or writing and, therefore, it does not involve the privilege. Schmerber v. California, supra, 761.
The courts of many states have applied the Schmerber rationale to the issue of compulsory blood testing in paternity proceedings and have uniformly found that the testing does not implicate the fifth amendment privilege on the theory that if a defendant in a criminal case can be CT Page 1645 compelled to submit to a blood test without violating hisfifth amendment privilege against self-incrimination clearly a respondent in a paternity proceeding which is generally recognized to be a civil proceeding where only status and civil liability are the resultant consequences, can also constitutionally be compelled to submit to blood testing, including the highly probative HLA testing. In the matter of the Department of Social Services on behalf of Sandra C. v. Thomas S. J., 100 App.Div.2d 119 474 New York Supp 2d 322, 328, In the matter of Carmen Gonzales M. v. Malcolm E., 114 Misc.2d 800, 803, 452 N.Y.S.2d 266; In the matter of Linda K. L. v. Robert S. 109 Misc.2d 628, Fam. Ct.440 N.Y.S.2d 825 (1981); Bowerman v. MacDonald, 157 Mich. App. 368,403 N.W.2d 140, 142 (1987); Eagan v. Ayd,313 Md. 265, 545 A.2d 55 (1988).
For the foregoing reasons this court concludes that the respondent's privilege against self-incrimination is not implicated by blood testing conducted in conformance with 46b-168 of the General Statutes.
 B.
The privacy issue raised by the respondent to the motion for blood tests raises more thorny issues of thefourth amendment to the federal constitution;[1] Article First, sec. 7 the Constitution of Connecticut;[2] and thefourteenth amendment to the United States Constitution.[3]
It is clearly established in Connecticut that the taking of a blood samples constitutes a search and seizure within the meaning of the fourth amendment to the federal constitution. State v. Acquin, 177 Conn. 352 (1979), Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 Lawyers Edition 2d 908. Further, in Erisoty's Appeal from Probate, 216 Conn. 514, 522-23, 582 A.2d 760 (1990) citing Schmerber, the court held that an order to submit to a blood grouping test for the purpose of determining paternity sufficiently implicated an individual's interest in human dignity and privacy protected by the fourth amendment to constitute the aggrievement required to maintain an appeal from the order of the Probate Court. In Erisoty's Appeal the court stated,
"This court buttressed this view strongly in CT Page 1646 State v. Grotton, 180 Conn. 290, 293, 429 A.2d 871 (1980), where we stated that "a blood test, the most intrusive of the procedures here involved, does not merely constitute an order of discovery; it also constitutes a search and seizure under the federal and state constitutions." Erisoty's Appeal, supra, 522.
In dealing with issues arising under both the federal and state constitutions the court must be mindful of two important considerations. First, that most of the decisions of the United States Supreme Court interpreting the fourth amendment deal with criminal law. There is no doubt, however, that civil intrusions such as administrative inspections for housing code or fire code violations may implicate the fourth amendment. Camara v. Municipal Court, 387 U.S. 523, 528 87 S.Ct. 1727,18 L.Ed.2d 930 (1967). And the Connecticut Supreme Court has further acknowledged that the fourth amendment does apply in certain civil contexts. State v. Floyd, 217 Conn. 73, 82
(1991). This civil/criminal distinction and difficulty in applying the fourth amendment's standards, is further complicated by the fact that paternity actions are sui generis.
"Historically, the action was criminal in form but civil in nature. It is fundamental, however, that the rules governing civil actions apply. As this court observed in Pelak v. Karpa, (146 Conn. 370, 372,151 A.2d 333): "It is settled law that our bastardy procedure while permitting the arrest of the body of the defendant for purposes of security is fundamentally a civil action, to which the general rules governing civil actions are applicable." Kuser v. Orkis, 169 Conn. 66, 71-72 (1975). Similarly, the plaintiff in a paternity proceeding need only prove the evidence by a fair preponderance rather than beyond a reasonable doubt as is required in criminal actions. DiMauro v. Natalino, 11 Conn. App. 548 (1987).
The second consideration to which the court must be mindful relates to the fact that it is often believed that the provisions of the federal constitution and the state constitution are coterminous, that is, that they have the same meaning and same limitations. See for example, Keogh v. Bridgeport, 187 Conn. 58, 66 44 A.2d 225 (1982). In the CT Page 1647 recent past our Supreme Court of Connecticut has deviated from the familiar path of interpreting the fourth amendment to define the protections provided by related provisions of the state constitution. See State v. Marsala, 216 Conn. 150; State v. Dukes, 209 Conn. 98, and State v. Oquendo,223 Conn. 635. In the Oquendo case our Supreme Court has determined that Article First, Sections 7 and 9 of the Connecticut Constitution afford greater protection to the citizens of this state than does the fourth amendment of the federal constitution in the determination of what constitutes a seizure. State v. Oquendo, supra 649-650.
Mindful of the unique nature of paternity proceedings and the greater protection provided by the Connecticut Constitution, the court must further consider the application of the fourteenth amendment to the issues involved in this case. "Like the fourth amendment, the fourteenth amendment has been found to protect an individual's interest in bodily autonomy and privacy. State v. Floyd, 217 Conn. 73,85 (1991).
 In 1891 the Supreme Court observed that "no right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law."
Union Pacific RR Co. v. Botsford, 141 U.S. 250, 251,11 S.Ct. 1000, 35 L.Ed. 734 (1891). Other citations omitted. State v. Floyd, supra 85-86.
The fourteenth amendment due process clause requires that certain interests be subject to particular and careful scrutiny in order to justify the abridgement of a person's liberty and privacy interests. "The touchstone of due process is protection of the individual against arbitrary action of government." Wolff v. McDonnell, 418 U.S. 539,558, 92 S.Ct. 2963, 41 L.Ed.2d 935 (1974), other citations omitted, State v. Floyd, supra 86.
Here the respondent has raised his right to privacy, Griswold v. Connecticut, 381 U.S. 479, 484-85, 85 S.Ct. 1678,14 L.Ed.2d 510 (1965), and his right to be free from unwarranted governmental intrusion, Eisenstadt v. Baird, CT Page 1648405 U.S. 438, 453, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972). Those constitutionally protected rights, including his interest in human dignity and privacy protected by thefourth amendment, Schmerber v. California, supra, 769-70 have been raised by the respondent in order to resist the blood testing.
Those vital interests must be weighed against the interests of the state and other individuals. It is the obligation of the trial court to balance the societal interests against personal interests in order to analyze the reasonableness of an action under the fourth amendment State v. Floyd, supra 85.
 The state has a substantial and compelling interest in protecting children and youths. In Re Juvenile Appeal (83-CD) supra 285, 287; see Lassiter v. Department of Social Services, 452 U.S. 18, 27, 101 S.Ct. 2153, 68 L.Ed.2d 640, Reh. denied, 453 U.S. 927, 102 S.Ct. 889, 69 L.Ed.2d 1023 (1981); Stanley v. Illinois, 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); Prince v. Massachusetts, 321 U.S. 158, 166, 64 S.Ct. 438, 88 L.Ed. 645 (1944). The state also has a compelling interest, arising out of statute and out of the common law; General Statutes 46b-83, 46b-84, 46b-86, 46b-180 et seq., 46b-231; United States v. Edwards, 572 F. Sup. 1527 (D. Conn. 1983); Zarifis v. Zarifis, 28 Conn. Sup. 128, 129 253 A.2d 673 (1969); State v. Boyd, 4 Conn. Cir. Ct. 544, 546 236 A.2d 476 (1967); to ensure that a parent supports his child born out of wedlock. State v. Wolfe, 156 Conn. 199, 203, 239 A.2d 509 (1968). Incidental to that right is the state's right to establish the paternity of a child in appropriate cases. Durso v. Misiorek, 200 Conn. 656, 661-62, 512 A.2d 917 (1986); see General Statutes 46b-160.
In Re L. 42 Conn. Sup. 562, 566 (Levin, J.) (1993).
Having considered the constitutional background, the due process requirements, and the respective interests of the state and the respondent, the court must now consider whether there are adequate procedural protections in place to properly evaluate and balance the protected interests of the respondent and the petitioner. CT Page 1649
In the ordinary course of paternity determinations, an action is brought under Chapter 815y of the General Statutes. (Sections 46b-160 through 46b-179d). Within Chapter 815y is 46b-160 which provides for the institution of proceedings by a verified petition of the mother or expectant mother which petition shall be in a form approved by the judges of the superior court. The chapter provides a full framework of procedural safeguards, including the right to a jury trial (46b-164). In addition to the statutory framework provided in the chapter, the judges of the superior court have set forth the requirements to be verified under oath which include, inter alia, the names and address and marital status of the mother; the date of birth of the child; the date and location of conception and the name and address of the putative father. Practice Book Form 504.6. This form further provides for a finding of probable cause by the court. Within this context of statutory framework and judicial rule making, procedural safeguards are established for the application of 46b-168, the ordering of blood testing.
These procedural safeguards are wholly absent in the context of juvenile proceedings brought under Chapter 815t of the General Statutes. The petition filed pursuant to46b-129 as in this case, does not require the mother to verify under oath the particulars of birth and conception of the child nor to declare under the penalties of perjury that the respondent is the father of the child. There is no finding of probable cause provided in Chapter 815t.
With respect to the motion filed in the instant case, no evidence was presented at the hearing. Counsel for the petitioner and respondent each made certain statements. "It is well-settled that representations of counsel are not, legally speaking, `evidence'". Cologne v. Westfarms Associates, 197 Conn. 141, 154 (1985). To rely on these statements of counsel as a basis to conduct the balancing of interest tests required of the fourth amendment would clearly violate the due process requirements of thefourteenth amendment. Cologne v. Westfarms Associates, supra, page 154.
It is clear from the case law that due process analysis requires a fact-based balancing of the CT Page 1650 individual's interests against the needs of society to infringe upon those interests. In order to do so there must be an adequate record predicated upon an evidentiary hearing. State v. Floyd, supra, 88-89.
Accordingly, in order to protect the constitutional rights of the respondent arising out of Article First Sec.7 of the Connecticut Constitution and under the due process requirements of the federal constitution, a fact-based evidentiary hearing is required when section 46b-168 blood testing is being requested in proceedings other than paternity proceedings under Chapter 815y. The fact-based evidentiary hearing must be conducted to ensure that the competing interests of the individual and the state are properly balanced and considered and that the procedural safeguards required by due process have been observed.
Since a fact-based evidentiary hearing was not requested nor conducted by the moving party in the present case, a proper record has not been obtained and the court was unable to evaluate the competing interests. The motion for blood testing must be denied. The denial is without prejudice to the petitioner to reclaim her motion and seek a proper fact-based evidentiary hearing.
Foley, J.