# IN RE JESSICA M.[1]
# IN RE SAMANTHA M.[2]
# IN RE STEPHEN M.[3]

Superior Court
Juvenile Matters

Memorandum filed January 26, 2001

## I
## INTRODUCTION

TROMBLEY, J. The present case arises out of an appeal from a decision of the Probate Court for the district of New Milford, *Landgrebe J.*, which, at the petitioner's request, terminated her parental rights with respect to her three children, ages eleven, nine, and eight. The appeal is being brought by the respondent, the commissioner of social services (commissioner). The petitioner, Malika I., has filed a motion to dismiss on the ground that the department of social services (department) lacks standing to file the appeal.

---

[1] Thus entitled in accordance with the spirit and intent of General Statutes § 46b-124 and Practice Book § 35-5.

[2] See footnote 1 of this opinion.
[3] See footnote 1 of this opinion.

## II

## HISTORY OF THE PROCEEDINGS

### A

### Probate Court, District of New Milford

On June 7, 1999, the petitioner filed with the New Milford Probate Court three applications seeking the termination of her parental rights with respect to each of her three children on the grounds of consent and abandonment. The petitioner also filed with each application a duly executed affidavit consenting to the termination of her parental rights. Among other things, the aforementioned affidavit specifically discloses those legal rights and responsibilities of a parent that would be eliminated by the termination of one's parental rights, including "the legal responsibility to support the child and to pay for the child's maintenance, medical and other expenses." On August 18, 1999, an assistant attorney general filed an appearance in the New Milford Probate Court on behalf of the state of Connecticut "including, but not limited to the department of social services." On April 19, 2000, after a hearing, Judge Landgrebe issued a decree terminating the parental rights of the petitioner with respect to her three children on both of the statutory grounds alleged.[4] The court found that termination was in the best interest of each child. The court's findings were based upon clear and convincing evidence. The court's ruling left the father of all three children, Frank M., as the sole parent.

On June 19, 2000, the department filed a motion with the Probate Court requesting reconsideration and opening of the decree that was denied by Judge Landgrebe on the same day. Two days later, the court granted the aforementioned assistant attorney general's motion for appeal from probate. The appeal was timely brought to

---

[4] See General Statutes § 45a-717 (f) and (g) (2) (A).

this court on July 25, 2000, pursuant to General Statutes §§ 45a-186[5] and 45a-187 by the department's filing of its reasons of appeal. On October 20, 2000, the petitioner filed a motion to dismiss alleging that the commissioner lacks the required standing to bring the appeal to this court.

B

## Superior Court, Family Support Division at Danbury

The mention of other historical court proceedings is necessary for a thorough understanding of the relevant facts and circumstances giving rise to this appeal by the department and the corresponding motion filed by the petitioner seeking dismissal of the appeal. On May 5, 1999, the petitioner was scheduled to appear before a family support magistrate at the Superior Court in the judicial district of Danbury, as the department had served her with a petition seeking a child support order from her for each of her three children, who were then receiving state financial assistance and were not residing with the petitioner. The case was continued until June 2, 1999, when the Superior Court, *Matasavage*, family support magistrate, issued a temporary child support order of $99 per week. On August 18, 1999, the same family support magistrate reduced the aforementioned order to a second temporary order of $45 per week. On December 15, 1999, the court, *Reynolds*, family support

---

[5] General Statutes § 45a-186 (a) provides: "*Any person aggrieved* by any order, denial or decree of a court of probate in any matter, unless otherwise specially provided by law, may appeal therefrom to the Superior Court in accordance with subsection (b) of this section. Except in the case of an appeal by the state, such person shall give security for costs in the amount of one hundred fifty dollars, which may be paid to the clerk, or a recognizance with surety annexed to the appeal and taken before the clerk or a commissioner of the Superior Court or a bond substantially in accordance with the bond provided for appeals to the Supreme Court. Appeals from any decision rendered in any case after a record is made under sections 51-72 and 51-73 shall be on the record and shall not be a trial de novo." (Emphasis added.)

magistrate, by agreement between the department and the petitioner, entered a permanent child support order for the three children in the amount of $242 per week in addition to $18 per week on an agreed arrearage of $14,703 due the state as of December 14, 1999. One of the effects of the probate decree that is being appealed by the department is the termination of the child support order.

## III

## ISSUE

Given that § 45a-186 (a) grants the right to appeal to the Superior Court any order, denial or decree of a Probate Court to "any person aggrieved," the issue presented by the petitioner's motion to dismiss is whether the commissioner, under the facts and circumstances of the present case, is, pursuant to Connecticut statutory and/or case law, an aggrieved person, who would thereby have standing to bring this appeal.

## IV

## DISCUSSION

## A

## Aggrievement

It has been held that, for the purposes of an appeal from Probate Court, an aggrieved person is one who can show a direct pecuniary interest in the matter in controversy, which interest the decree appealed from will, in some way, injuriously affect. See *Kerin* v. *Goldfarb*, 160 Conn. 463, 467, 280 A.2d 143 (1971); *Kaskel* v. *Steinberg*, 142 Conn. 379, 384, 114 A.2d 853 (1955). "Unless the plaintiffs are persons actually aggrieved by the order or decree, the Superior Court has no jurisdiction over the subject matter of the appeal. . . . If the plaintiff is not an aggrieved party, the appeal is void." (Citations omitted.) *Lenge* v. *Goldfarb*, 169 Conn. 218,

220–21, 363 A.2d 110 (1975). Pursuant to Practice Book § 10-33, this court is obligated to dismiss the appeal if it finds that subject matter jurisdiction is lacking due to the failure of the department to establish the requisite aggrievement. See *Maloney* v. *Taplin*, 154 Conn. 247, 250, 224 A.2d 731 (1966).

## B

### Probate Practice and Procedure

The petitioner argues that an indicia of whether the department possesses the requisite standing to bring this appeal should be provided by some specific statutory entitlement. That is, the department's interest in this matter should be statutorily delineated and defined. The petitioner, in her brief, cites several statutes applicable to probate proceedings in general and to termination of parental rights proceedings in particular which, the petitioner claims, define and limit the state's participation therein and which, in the present case, preclude the department's participation in the proceedings.

The petitioner claims that General Statutes § 45a-715 (a) (6), which dictates who may petition a Probate Court for termination of parental rights, and General Statutes § 45a-716 (b) (4), which lists those persons entitled to notice by the Probate Court of the filing of a termination application, clearly establish the department of children and families as the only state agency having an interest. The petitioner acknowledges that although General Statutes § 45a-131 makes specific mention of the department of social services, an employee of that department must, according to the petitioner, demonstrate to the Probate Court some specifically delineated interest in order to be permitted to participate fully in the proceeding.[6]

---

[6] General Statutes § 45a-131 provides: "In any proceeding in the Probate Court in which the state is interested through the Department of Social Services, the Department of Administrative Services or the Department of Veterans' Affairs, any employee of any such department shall be permitted to participate fully in the proceeding in the same manner as any other

As to the latter statute, § 45a-131 provides that the state simply be "interested." No delineation of that interest is required by § 45a-131. As to the termination statutes cited, the petitioner ignores subdivision (3) of subsection (b) of § 45a-716 which permits the court to provide notice to "the guardian or *any other person whom the court shall deem appropriate.*" (Emphasis added.) This court takes judicial notice of a publication entitled "Termination of Parental Rights and Adoption Procedure" authored by the Probate Court administrator and available to the public at Probate Courts throughout the state. On page three of that publication is a listing of those "interested parties" to whom the Probate Court must provide notice. Listed under item (5) is "any other person deemed appropriate by the Probate Court." In the present case, the New Milford Probate Court did in fact provide notice of the petitioner's application to the department resulting in the appearance of an assistant attorney general. In light of that notice and the Probate Court's apparent determination that the department was an interested party, § 45a-131 permits the participation of any department employee and his or her attorney in these termination proceedings as fully and "in the same manner as any other interested party before the court."

Moreover, the application form completed and filed by the petitioner appears, in and of itself, to recognize the interest of the department in certain termination proceedings as that form, just under the name, place of birth, and date of birth of the child, contains a box to the right of which is the following: "The minor child is presently or was formerly the recipient of state assistance." On each application, the petitioner typed an "X"

---

interested party before the court. The judge of the court shall not require that the state be represented by an attorney-at-law as a condition of participation."

in that box, thus acknowledging receipt by her children of state financial assistance.[7]

## C

## Child Support, "TANF" and the Department

### 1

### Duties Imposed by General Statutes §§ 46b-231, 17b-179 and Related Statutes

The department cites General Statutes § 46b-231 (t) as a grant of authority to the attorney general to file this appeal. Section 46b-231 (t) (1) of the Family Support Magistrate's Act provides that one of the duties of the attorney general is to "[r]epresent the interest of the state in all actions for child or spousal support in all cases in which the state is furnishing or has furnished aid or care to one of the parties to the action or a child of one of the parties."

The petitioner correctly points out that the present case involved a termination of parental rights application and does not involve a support petition. The department, however, counters that § 46b-231 (t) does not limit the obligation of the office of the attorney general to represent the state in actions for child or spousal support; it mandates that office to represent the state's interest in "all cases" in which the state provides or has provided financial aid to a party or a child of a party.

The department also points to certain statutory duties and obligations imposed upon the commissioner thereof relative to families who have received state financial assistance. Section 17b-179 names the child support enforcement bureau of the department of social

---

[7] It is noteworthy that the form utilized by the petitioner is an official form used by all Probate Courts, compiled and approved by the Probate Court administrator as mandated by General Statutes § 45a-78 (b).

services as the so-called "IV D Agency" to collect and distribute support payments and to administer the child support program mandated by Title IV-D of the Social Security Act.[8] That department is obligated to determine the financial condition and liability of a parent of a child receiving financial aid and to redirect any payments from that child's mother and/or father to the state.[9] General Statutes § 17b-81 obligates the commissioner to investigate the financial condition of each "legally liable relative" and establish the financial liability of each such relative. The type of financial assistance received by the three children in the present case and currently being received by them was formerly known as "aid to dependent children" and is now known as "temporary assistance to needy families" or "TANF." General Statutes § 17b-2 vests the responsibility for the administration of the TANF program and Connecticut's child support enforcement plan in the department. The statutes cited by the department clearly establish the vital interest of the department in establishing, collecting and enforcing child support orders and in pursuing reimbursement to the state for moneys paid out to children of parents who possess the financial capability of payment to the state for the benefits received. As noted,

[8] 42 U.S.C. § 651 et seq.

[9] General Statutes § 17b-179 (b) provides: "The Commissioner of Social Services shall, in the manner provided in section 17b-81, investigate the financial condition of the parent or parents of: (1) Any child applying for or receiving assistance under the provisions of sections 17b-807 and 17b-808 and the temporary family assistance for needy families program, which may be referred to as 'TANF' for the purposes of this section, and (2) any child seeking IV-D child support enforcement services, and (3) any child committed to the care of the Commissioner of Children and Families who is receiving payments in the foster care program, and shall determine the financial liability of such parent or parents for the child. The Bureau of Child Support Enforcement shall have authority, upon notice to the obligor and obligee, to redirect payments for the support of all such children to the state of Connecticut, provided, upon discontinuance of public assistance, payments shall be distributed to the family."

the petitioner's child support order ended with the issuance of the probate decree being appealed. Although the department may pursue payment from the petitioner for any arrearage accumulated up to the date of termination, it is powerless to obtain from her any reimbursement for TANF benefits currently being paid to her children or such benefits to be paid in the future—that is, unless and until the termination of her parental rights is overturned by this court on appeal. This court finds that the statutorily imposed duties on the attorney general and the commissioner establish, without more, the vital interest of the department in these proceedings and provide the department with the requisite aggrievement and standing to appeal the probate decree.

2

### The Impact of State and Federal Public Policy Regarding Child Support

It would also appear that the department's action in bringing the present appeal to this court is consistent with the clearly defined federal and state public policy relative to the support by parents of their children, in particular those children who do not reside with their parents and those children supported by the taxpayers. See *Mulholland* v. *Mulholland*, 31 Conn. App. 214, 224, 624 A.2d 379 (1993), aff'd, 229 Conn. 643, 643 A.2d 246 (1994). A number of statutes in our state deal with the obligation of a parent to support his or her child including General Statutes § 46b-56, authorizing the Superior Court to issue orders providing for the support, care and custody of minor children in dissolution, legal separation and annulment actions; General Statutes § 46b-61, providing for child support orders for parents who live separately; General Statutes § 46b-84, obligating parents to support their children based on their respective abilities; and General Statutes § 46b-215, providing for the entry, modification and enforcement of child support orders against any person who

neglects or refuses to support his or her child and specifically authorizing child support actions against parents by state officials, including the commissioner, in cases in which they or their children have received public assistance payments.

In the case of *In re Bruce R.*, 234 Conn. 194, 662 A.2d 107 (1995), our Supreme Court directed Probate and Superior Courts to consider the financial condition of the parents, as provided by General Statutes § 45a-717 (e) (1), as one of the factors in making a determination as to whether to grant or deny an application or petition seeking a termination of parental rights. *In re Bruce R.*, supra, 208. In particular, such consideration was mandated in a case such as the present one, i.e., a contested consensual petition to terminate parental rights. Noting that termination of a parent's parental rights absolves the parent of all future support obligations, Justice Norcott, writing for the majority, states: "Requiring that the parents' financial condition be a consideration in determining the children's best interest will deter the filing of a consensual petition that is no more than a ruse or a sham to avoid support obligations. Further, such information will enable the trial court to make a determination that is searching, penetrating and thorough." Id.

Referring to the federal and state policy on the matter of child support, Justice Norcott echoes the opinion of the Appellate Court: "Indeed, to interpret the current statutory scheme to permit a trial court to forgo consideration of the financial condition of the parents would ignore *the clear federal and state policies* that indisputably mandate that, in all but the most extreme cases, children should be maintained and supported by their parents. [B]oth state and national policy has been, and

continues to be, to ensure that all parents support their children and that children who do not live with their parents benefit from adequate and enforceable orders of child support." (Emphasis added; internal quotation marks omitted.) Id., 209.

Referring to legislative and judicial efforts in Connecticut and throughout the country "to hold parents to their financial responsibility to support their children"; id., 213; the court concluded: "Therefore, trial courts should grant consensual petitions only in those rare situations where, after considering the totality of the circumstances, including the financial condition of the parents, granting that petition truly would be in the best interest of the child." Id., 214.

3

An Appeal from Probate Requires a Trial De Novo

The petitioner in the present case, however, alleges that the New Milford Probate Court did, in fact, follow the dictates of the Supreme Court as set forth in *Bruce R.*, and did give due consideration to financial issues. Whether the petitioner is correct in that assertion is not a proper consideration for this court at this time. If the department is a person aggrieved by the decree of the Probate Court and, therefore, has standing to bring the present appeal, the trial of that appeal in this court would be a trial de novo.[10] This court must decide the appeal " 'as an original proposition unfettered by, and ignoring, the result reached in the probate court.' " *Kerin* v. *Stangle*, 209 Conn. 260, 264, 550 A.2d 1069 (1988), quoting *Prince* v. *Sheffield*, 158 Conn. 286, 298, 259 A.2d 261 (1969). The issue of whether Judge Landgrebe afforded the financial conditions of the parents due consideration at the hearing, therefore, has nothing

[10] General Statutes § 45a-186 (a) requires a trial de novo unless a record was made of the hearing conducted in the Probate Court. In the present case, the court is unaware of any such record.

to do with the issue raised by the petitioner's motion; i.e., whether the department has standing to bring the appeal. The question as to what facts were considered by the Probate Court, and as to what weight each fact was given by that court, are irrelevant for the purposes of deciding the petitioner's motion.

### 4

### The Holding in *Watts*

The department, in its brief, cites *Dept. of Income Maintenance* v. *Watts*, 211 Conn. 323, 558 A.2d 998 (1989), as controlling authority in the present case on the issue of aggrievement and the standing of the department to bring the present appeal. In *Watts*, the Probate Court for the district of Clinton had approved a disclaimer by the ward of the defendant conservator of a testamentary trust. Id., 325. The ward had been a recipient of federal medicaid and state disability assistance. The state appealed to the Superior Court, alleging the disclaimer was not permitted absent the consent of the commissioner of income maintenance, pursuant to General Statutes § 17-82j (now General Statutes § 17b-85). The Superior Court agreed with the Probate Court and upheld the approval of the disclaimer. The commissioner of income maintenance filed an appeal with the Supreme Court which first considered the issue of standing.

Citing General Statutes § 17-83e (now General Statutes § 17b-93) which empowered the state to assert a claim against any beneficiary for the full amount of medicaid and disability benefits paid, and, noting that the ward's disclaimer, if allowed to stand, would impact adversely on the state's claim pursuant to the aforementioned statute, the court concluded: "We need not determine, of course, whether the state would prevail on a claim brought pursuant to § 17-83e, because, as stated earlier, the question for establishing aggrievement is

whether there is some *possibility* that a protected interest has been adversely affected. *Williams* v. *Houck,* [143 Conn. 433, 438, 123 A.2d 177 (1956)]. Nonetheless, the apparent effect of the disclaimer in the present case is that the ward will not have any assets that can be reached for reimbursement, and the state's possible claim under § 17-83e will be thwarted. We conclude, therefore, that the possible adverse effect on the state's right to seek reimbursement under § 17-83e is sufficient to establish aggrievement in this case." (Emphasis in original.) *Dept. of Income Maintenance* v. *Watts,* supra, 211 Conn. 327.

As the department asserts in its brief, § 17b-93 (a) provides the state with the right to seek reimbursement of TANF benefits paid on behalf of the petitioner's three children from the parents of the children.[11] Those benefits are mentioned in the same paragraph as the medical

[11] General Statutes § 17b-93 (a) provides: "If a beneficiary of aid under the state supplement program, medical assistance program, aid to families with dependent children program, temporary family assistance program or state-administered general assistance program has or acquires property of any kind or interest in any property, estate or claim of any kind, except moneys received for the replacement of real or personal property, the state of Connecticut shall have a claim subject to subsections (b) and (c) of this section, which shall have priority over all other unsecured claims and unrecorded encumbrances, against such beneficiary for the full amount paid, subject to the provisions of section 17b-94, to him or in his behalf under said programs; and, in addition thereto, the parents of an aid to dependent children beneficiary, a state-administered general assistance beneficiary or a temporary family assistance beneficiary shall be liable to repay, subject to the provisions of said section 17b-94, to the state the full amount of any such aid paid to or in behalf of either parent, his spouse, and his child or children. The state of Connecticut shall have a lien against property of any kind or interest in any property, estate or claim of any kind of the parents of an aid to dependent children beneficiary, in addition and not in substitution of its claim, for amounts owing under any order for support of any court or any family support magistrate, including any arrearage under such order, provided household goods and other personal property identified in section 52-352b, real property pursuant to section 17b-79, as long as such property is used as a home for the beneficiary and money received for the replacement of real or personal property, shall be exempt from such lien."

and supplemental disability benefits paid to the ward in *Watts*. The agency in *Watts* is the predecessor to the department of social services. This court agrees with the assistant attorney general's argument that the taxpayers of Connecticut have the same statutory right to seek reimbursement from the petitioner, the mother of the three children in the present case, as the taxpayers had to seek reimbursement from the ward in *Watts*. That right gives the department in the present case the standing to appeal a decree which impacts adversely thereon.

In stressing the importance of the holding in *Watts*, the department refers to chapter V of the Connecticut Probate Practice Book entitled "Appeals from Probate" which cites *Watts* as a prime example of aggrievement within the context of the § 45a-186 appeal statute. Connecticut Probate Practice Book (4th Ed. 1996) part I, p. 41. On the same page of that text, under the heading, "Who May Appeal" is the following: "In order to prosecute an appeal from a court of probate, it is necessary that the plaintiff be aggrieved within the meaning of Gen. Stat. § 45a-186, *Erisoty's Appeal from Probate*, 216 Conn. 514, 519 [582 A.2d 760] (1990). The concept of aggrievement is a practical and functional one designed to assure that only those with a genuine and legitimate interest can appeal an order of the court of probate. Id.

"The test is whether there is a possibility, as distinguished from a certainty, that some legally protected interest of the appellant has been adversely affected. *Department of Income Maintenance* v. *Watts*, [supra, 211 Conn. 326]. The qualifying interest may be a direct pecuniary one, or it may consist of an injurious effect upon some legally protected right or status of the appellant. Id."

The interest that the department has in the present case that qualifies it to claim aggrievement and to have

the standing to bring this appeal is a direct pecuniary one. Its legally protected right to seek reimbursement of the TANF benefits from the petitioner would be injuriously affected if the termination of her parental rights were to remain in effect.

The petitioner urges this court to interpret narrowly the holding in *Watts* and confine the same to the facts and the particular benefits paid to the ward in that case. If this court were to do so, such action would amount to a difference without meaningful distinction and would thwart the clearly expressed intent and purpose of that decision. Pursuant to *Watts* and under the facts and circumstances of the present case, this court finds that the department is an aggrieved person within the meaning of § 45a-186.

5

### Standing via Written Assignment

The department also claims standing by reason of certain assignments executed by both parents and the current caretaker of the petitioner's three children (Aunt Katherine), each of whom assigned to the state of Connecticut all the assignor's child support rights, past, present and future. The assignments were executed pursuant to General Statutes § 17b-79 et seq. and subrogate to the state all legal rights involving child support, including the right and entitlement of the three children to receive child support from their parents. Thus, the state makes the intriguing argument that for the purposes of child support issues, the commissioner has the standing of the children, their father, the current caretaker and the petitioner herself. That may well be, however, this court does not need to examine a piece of paper executed by the children's caregiver, who has received financial assistance on their behalf from the

taxpayers of this state, in order to find that the commissioner, as the representative of those taxpayers, has the requisite standing to bring this appeal.

## V

## CONCLUSION

Whether this court considers the issue presented by the petitioner's motion from the prospective of probate practice and procedure, statutory definition and entitlement, important state and federal public policy, or the instruction and guidance offered by our Supreme Court, there is no question that the commissioner possesses the requisite aggrievement and, therefore, the requisite standing, to bring and prosecute this appeal.

The petitioner's motion to dismiss the appeal is denied. The case is ordered to trial.