ANTHONY VECCA v. STATE OF CONNECTICUT
(10969)

FOTI, LAVERY and FREEDMAN, Js.

Argued October 5—decision released November 24, 1992

*Jonathan L. Gould,* with whom was *Barry Scheinberg,* for the appellant (plaintiff).

*William J. McCullough,* assistant attorney general, with whom, on the brief, was *Richard Blumenthal,* attorney general, for the appellee (defendant).

FREEDMAN, J. The issue presented by this appeal is whether the calculation of "full salary" benefits available to the plaintiff, an injured state employee, under General Statutes (Rev. to 1989) § 5-142 (a)[1] is based on the plaintiff's actual earnings at the time of the injury, which includes overtime pay, shift differential and a maintenance allowance, or whether his benefits under § 5-142 (a) are limited to his base pay at the time of the injury. The compensation review division of the workers' compensation commission determined that full salary does not include overtime pay, shift differential and a maintenance allowance, limiting the plaintiff to benefits based on his base pay. We affirm the review division's decision.

The facts were stipulated. On May 10, 1989, the plaintiff sustained a compensable injury to his right shoulder and left knee while working as an agency police officer at Whiting Forensic Institute, a state facility. The plaintiff was temporarily totally disabled for approximately six months following his injury. At the time of his injury, the plaintiff's base pay was $667.90

---

[1] General Statutes (Rev. to 1989) § 5-142 (a) provides in relevant part: "If any member of . . . any institution or facility of the department of mental health giving care and treatment to persons afflicted with a mental disorder or disease . . . sustains any injury while making an arrest or in the actual performance of such police duties or guard duties or fire duties or inspection duties . . . or while attending or restraining an inmate of any such institution or as a result of being assaulted in the performance of his duty, the state shall pay all necessary medical and hospital expenses resulting from such injury. If total incapacity results from such injury, such person shall be removed from the active payroll the first day of incapacity, exclusive of the day of injury, and placed on an inactive payroll. He shall continue to receive the full salary which he was receiving at the time of injury subject to all salary benefits of active employees, including annual increments, and all salary adjustments, including salary deductions, required in the case of active employees, for a period of two hundred sixty weeks from the date of the beginning of such incapacity. Thereafter, such person shall be removed from the payroll and shall receive compensation at the rate of fifty per cent of the salary which he was receiving at the expiration of said two hundred sixty weeks so long as he remains so disabled . . . ."

per week. The plaintiff's actual average weekly wage, however, was $885.12, which included his base pay plus shift differential earnings, overtime in a varying number of hours, and a maintenance allowance of $6.25 per week. The plaintiff contends that he should have been paid $1770.24 per biweekly pay period ($885.12 per week) under § 5-142 (a). The defendant, on the other hand, claims that § 5-142 (a) obligates the state to pay the plaintiff only his base pay of $1335.80 biweekly ($667.90 per week) and not other payments, such as overtime, shift differential or maintenance allowance.

The workers' compensation commissioner concluded that the plaintiff's "full salary" under § 5-142 (a) included all enhancements to base pay. The review division reversed, however, on the basis of its prior decisions,[2] which held that salary is a more restrictive term than wages and thus the "full salary" language in § 5-142 (a) does not include any amounts above base pay. See *Vecca* v. *State,* 9 Conn. Workers' Comp. Rev. Op. 280 (1991). This appeal followed.

Section 5-142 (a) was enacted "in order to provide enhanced benefits by way of disability compensation for employees injured while engaged in special state service. The class of employees eligible for these benefits is those who 'in the daily course of performing their duties, work in an atmosphere sometimes charged with emotion and stress, and face the possibility of confrontations with inmates, patients or arrestees, which confrontations often result in violence.' *Lucarelli* v. *State,* 16 Conn. App. 65, 69, 546 A.2d 940 (1988). If injured under the circumstances prescribed in the statute, this class of state employees is entitled to disability compensation based on the employee's full salary, rather than upon a percentage of his or her weekly earnings, the

---

[2] See *Palmer* v. *State,* 9 Conn. Workers' Comp. Rev. Op. 53 (1991); *Jones* v. *Mansfield Training School,* 9 Conn. Workers' Comp. Rev. Op. 53 (1991), rev'd on other grounds, 220 Conn. 721, 601 A.2d 507 (1992).

normal workers' compensation standard [under General Statutes § 31-307]."[3] *Jones* v. *Mansfield Training School,* 220 Conn. 721, 725, 601 A.2d 507 (1992).

We commence our analysis of the "full salary" language of § 5-142 (a) by examining the recent decision in *Jones* v. *Mansfield Training School,* supra. In *Jones,* our Supreme Court determined that injured state employees covered by § 5-142 (a) may choose between the full salary compensation rate of § 5-142 (a) or the method of benefits calculation under § 31-307. The benefit calculation in *Jones* under the latter provision included overtime. Id. If we were to interpret the calculation under § 5-142 (a) to include the same items as those factored into the calculation under § 31-307, then the *Jones* case could only be understood to hold that a state employee coming within § 5-142 (a) may, instead of receiving 100 percent of such items, choose to accept two thirds of such items.[4] We will not ascribe such a

---

[3] Under General Statutes § 31-307, the normal workers' compensation standard is "equal to sixty-six and two-thirds per cent of [the employee's] average weekly earnings at the time of the injury . . . ." These "average weekly earnings" under § 31-307 are based on "the total wages received by the injured worker from the employer in whose service he is injured during the twenty-six calendar weeks immediately preceding that during which he was injured . . . ." General Statutes § 31-310.

[4] We recognize that the variable nature of overtime work, in particular, might mean that full compensation during any particular week could be below, even well below, an employee's average earnings. This fact, in our view, does not further the claimant's attempt to explain away the decision in *Jones.* In fact, in highlighting both the variable nature of weekly compensation where overtime work is involved and the lack of any formula for averaging under § 5-142 (a) similar to that under § 31-310; see footnote 3, supra; the claimant, we believe, recognizes that his interpretation of the statute will lead to arbitrary results. Under the claimant's interpretation of the statute, two similarly situated state employees will receive different benefits under § 5-142 (a) simply because one happened to work more overtime or on a shift paying a differential during the pay period preceding the injury. We do not believe that the legislature intended such bizarre results. *Sanzone* v. *Board of Police Commissioners,* 219 Conn. 179, 203, 592 A.2d 912 (1991); *State* v. *Uretek, Inc.,* 207 Conn. 706, 719, 543 A.2d 709 (1988).

bizarre interpretation to our decisional law. Nor do we think that our Supreme Court would choose to address such an issue of statutory interpretation unless the term salary is more restrictive than the terms earnings and wages. We can discern no reason why our Supreme Court in *Jones* would have addressed the question of whether an injured state employee entitled to her full salary under § 5-142 (a) can instead seek benefits equal to two thirds of that same amount under § 31-307. Because our courts will not address questions that are purely academic due to the absence of an actual and existing controversy; *Taylor* v. *Synergy Productions, Ltd.,* 21 Conn. App. 661, 667, 575 A.2d 1050 (1990); we can conclude only that our Supreme Court, although it stated that it did not reach the issue, must have sub silentio determined that the term salary is more restrictive than the terms earnings and wages in the context of our workers' compensation laws.

In addition, this difference between salary and wages and earnings finds support in other authoritative sources. Wages and earnings are broad terms that include "[e]very form of renumeration payable . . . for personal services . . . ." Black's Law Dictionary (6th Ed.). Salary, by contrast, is a term that is more limited in its scope. It refers to an employee's base pay prior to the inclusion of overtime pay or other salary enhancements. See *Szudora* v. *Fairfield,* 214 Conn. 552, 573 A.2d 1 (1990); Black's Law Dictionary (6th Ed.) ("fixed periodical compensation"). Additionally, the review division has, without exception, calculated the "full salary" under § 5-142 (a) without including overtime. See footnote 2, supra. Great deference must be shown to the statutory construction given by the agency. *Schieffelin & Co.* v. *Department of Liquor Control,* 194 Conn. 165, 173, 479 A.2d 1191 (1984); see also *Jones* v. *Mansfield Training School,* supra, 738 n.6 (*Berdon, J.,* dissenting).

Although § 5-142 (a) provides no definition of the statutory term full salary, in construing a statute we may look to other statutes relating to the same subject matter for guidance because the legislature is presumed to have created a consistent body of law. *Baybank Connecticut, N.A.* v. *Thumlert,* 222 Conn. 784, 790, 610 A.2d 658 (1992); *Heffernan* v. *Slapin,* 182 Conn. 40, 46, 438 A.2d 1 (1980). In establishing our general and special workers' compensation statutes, the legislature has used different terms to establish the calculation rates of the benefits available. These differences are significant. See *Stitzer* v. *Rinaldi's Restaurant,* 211 Conn. 116, 119, 557 A.2d 1256 (1989) (legislature knows how to use broader or limiting terms when it chooses to do so). Accordingly, we conclude that the legislature intended the term "salary" in § 5-142 (a) to be limited to an employee's base salary, exclusive of any amounts previously paid as overtime, shift differential or maintenance allowance.

We recognize that our interpretation of § 5-142 (a) does not necessarily further the intention of the legislature "to make these benefits a generous source of compensation for its designated beneficiaries." *Jones* v. *Mansfield Training School,* supra, 725. We note that when the predecessor to § 5-142 (a) was enacted in 1939, collective bargaining and the forty hour work week with premium pay for overtime were in their infancy. See National Labor Relations Act of 1935, 29 U.S.C. § 151 et seq.; Fair Labor Standards Act, 29 U.S.C. § 201 et seq. Moreover, state employees in Connecticut did not have collective bargaining rights until 1975. See Public Acts 1975, No. 566 (now General Statutes § 5-270 et seq.). Because of these rights and others developed since 1939, overtime and other remunerations beyond the stated weekly or biweekly salary amounts have become commonplace for many state employees. Yet, throughout this period of change in

labor relations and in the wage and hours provisions of our laws and in collective bargaining agreements, the use of the term "salary" in § 5-142 (a) has remained despite the provision's various amendments and reenactments. Because the words of a statute must be interpreted as written, it is not what the legislature might have said or should have said in light of changing historical conditions that controls; we must instead determine the meaning of what the legislature did say. *Roto-Rooter Services Co.* v. *Department of Labor*, 219 Conn. 520, 525, 593 A.2d 1386 (1991). Any change in the words of the statute, then, must come from the legislature.

The decision of the compensation review division is affirmed.

In this opinion the other judges concurred.