[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I.
Introduction
On May 2, 1992, the plaintiff, Centennial Development, Inc. (hereinafter, "Centennial"), as the holder of an option to purchase, applied to the defendant Farmington Plan and Zoning Commission (hereinafter, "the Commission") for a change of zone and site plan approval to construct 58 multiple family units and 74 single family units on the 27.6 acre property owned by Theodore Poulos, Trustee, at 224 Scott Swamp Road, Farmington, Connecticut. Through deed and other restrictions, Centennial proposed to ensure that 39% of the units would qualify as affordable under the provisions of General Statutes 8-30g.[1] On June 22, 1992, the Commission held a public hearing and on July 20, 1992, the Commission unanimously voted to deny the application. Pursuant to General Statutes 8-30g(d), Centennial submitted a modification of its proposal on July 28, 1992, altering the mix of units to 54 multiple family and 78 single family with 44% deemed affordable. After a public hearing on September 8, 1992, the Commission unanimously denied that application without prejudice.
The instant appeal was filed returnable November 3, 1992. A special defense, answer and return was filed by the Commission on December 2, 1992. During this period, the parties negotiated a settlement which was the subject of a public hearing held on January 11, 1993. On January 19, 1993, Howard and Shirley Kilpatrick, Dorothy C. and Cynthia A. Jones, Robert F. and Diane Condon, Stephen and Antoinette Giannini, and Robert M. and Leah C. Jones (hereinafter, collectively referred to as the "Intervening Defendants") moved to intervene as defendants in this action as their properties are all within 100 feet of the subject property. They alleged, inter alia, that the Commission was considering a settlement proposal which they would have opposed had it been presented at the CT Page 5905 initial hearing. On January 25, 1993, the Commission voted to accept the settlement and on February 1, 1993, Judge Maloney granted the motion to intervene.[2]
On February 4, 1993, Centennial requested a hearing on the proposed settlement and on February 5, 1993, the intervening defendants made a similar request, expressing their opposition.
 II.
Discussion
 A.
The issue before this court is whether, in an affordable housing appeal, the court may approve a settlement between the developer and the Commission when the intervening defendants object.
1.
General Statutes 8-8 (n) governing appeals from zoning commissions, planning commissions, combined planning and zoning commissions or zoning boards of appeals states:
 No appeal taken under subsection (b) of this section shall be withdrawn and no settlement between the parties to any such appeal shall be effective unless and until a hearing has been held before the superior court and such court has approved such proposed withdrawal or settlement.
Section 22a-43 (c) has a similar provision for appeals from inland wetland and watercourses commissions. In Ralto Developers, Inc. v. Environmental Impact Commission of the City of Danbury, 220 Conn. 54 (1991), the court interpreted 22a-43 (c) as requiring agreement of all the parties as a condition precedent to judicial approval. Id., 63. The intervening defendants maintain that this case controls this situation and prohibits this court from approving the settlement. This court agrees.
Both the Commission and Centennial argue that section CT Page 5906 8-8n should not apply to this situation as it clearly frustrates the intent of the legislature in its efforts to promote the construction of affordable housing. As the Commission appropriately points out, "the Commission [is] put in the incongruous position of being forced to support its denial when, in fact, with the changed circumstances, it favors approval. . . Here the commission has concluded that the application as modified by the proposed settlement should be approved, but Ralto would bar such approval because of neighbor opposition which the commission heard at a special public hearing on the settlement proposal and rejected." (Commission's Brief, p. 10).
This court notes that the purpose of General Statutes 8-8n and 22a-43 (c) was to provide a judicial oversight to prevent potential abuse, fraud or collusion between the parties in a land use appeal. See Montville Assocs. v. Town of Montville Zoning and Planning Commission, 5 C.S.C.R. 162, Axelrod, J. (1990). That court noted Representative Tulisano's comments during the legislative discussion of General Statutes 8-28 (c) (the predecessor to 8-8n):
 The purpose for the language in the bill is to assure that there is no surreptitious dealing, either between some members of the boards of zoning, zoning boards and applicants, or that some people will take in effect the frivolous appeal as a title to use up their leverage in order to extradite or squeeze out one . . . I guess I was going to use extort, but I think that might be a little — yes, this is to make sure any settlements are fair, and hasn't been used as a leverage, and unfair to either party involved. That's the reason why.
Connecticut General Assembly. 27 H. Proc. Pt. 10, (1984) sess., p. 3781.
Also noted in Montville was the appellate court's decision in Sendak v. Planning and Zoning Commission, 7 Conn. App. 238
(1986), a case with similar issues arising prior to the enactment of section 8-8n. While the court specifically found that a settlement of a pending appeal by way of a stipulated CT Page 5907 judgment was, absent bad faith, not an official act from which a normal appeal could lie, it did discuss the competing interests of the promotion of settlements and the need for judicial scrutiny. In discussing settlement of cases, the court noted that "[t]his interest would be seriously undercut if, after a planning commission has in good faith settled a pending appeal by agreeing to a stipulated judgment, that settlement could be challenged by a subsequent appeal by third parties." Id., 243.
There is absolutely no evidence of collusion or bad faith by the applicant or the Commission in the present case. Indeed, the court notes that the sole purpose of the intervening defendants' request to join this action was to oppose this settlement.
2.
As noted, the Commission has suggested that section 8-8(n) does not apply to appeals under section 8-30g. While the Act generally did create a different method for bringing and reviewing appeals for affordable housing applications, many of the Chapter 124 procedures do apply. The legislature stated "[e]xcept as otherwise provided in this section, appeals involving an affordable housing application shall proceed in conformance with the provisions of said sections 8-8,8-9, 8-28, 8-30 or 8-30a as applicable." General Statutes 8-30g(b). As there is no stated exception, it is clear to this court that the legislature has declared that section 8-8n would apply.
This court cannot adopt the interpretation urged by the Commission or Centennial simply because there is a good reason to do so. Battersby v. Battersby, 218 Conn. 467, 470
(1991). It may not substitute its idea of what might be a wise provision in place of a clear expression of legislative will. State v. Fiasconaro, 25 Conn. App. 643, 645 (1991). As noted in Vecca v. State, 29 Conn. App. 559, 565 (1992):
 Because the words of a statute must be interpreted as written, it is not what the legislature might have said or should have said in light of changing historical conditions that controls; we must instead determine the meaning of what the legislature CT Page 5908 did say. Roto-Rooter Services Co. v. Department of Labor, 219 Conn. 520, 525, 593 A.2d 1386 (1991). Any change in the words of the statute, then, must come from the legislature.
 III.
Conclusion
For the reasons stated above, the court may not approve the stipulation between the Commission and Centennial.
MARSHALL K. BERGER, JR. JUDGE, SUPERIOR COURT