MILLER'S POND COMPANY, LLC *v.* ARTHUR
J. ROCQUE, COMMISSIONER OF
ENVIRONMENTAL PROTECTION
(AC 21850)

Schaller, Bishop and Hennessy, Js.

Argued February 13—officially released July 30, 2002

*Richard S. Cody*, with whom, on the brief, was *Jason Westcott*, for the appellant (plaintiff).

*Richard F. Webb*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Kimberly P. Massicotte*, assistant attorney general, for the appellee (defendant).

*Opinion*

BISHOP, J. The plaintiff, Miller's Pond Company, LLC, appeals from the judgment of the trial court dismissing on jurisdictional grounds its appeal from an

administrative decision of the defendant, Arthur J. Rocque, the commissioner of environmental protection (commissioner), rejecting the plaintiff's application for a permit to divert water and to remove gravel from Miller's Pond. The plaintiff claims that the court improperly dismissed the appeal on the ground that the commissioner's action was not a final decision in a contested case within the meaning of the Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166 et seq. We reverse the judgment of the trial court and remand the case for further proceedings consistent with this opinion.

The following facts and procedural history are relevant to this appeal. On November 5, 1998, the plaintiff filed an application with the commissioner, pursuant to the Connecticut Water Diversion Policy Act, General Statutes §§ 22a-365 to 22a-378, for a permit to divert water and to remove gravel from Miller's Pond. Most of the land on which Miller's Pond is located is owned by the plaintiff,[1] and the pond has been identified since the 1980s as a future source of potable water to supplement the public water supply in southeastern Connecticut.

The record reflects that, prior to the filing of the application, an official from the department of environmental protection (department) met with the plaintiff's consultant and indicated that a single public hearing would probably be held on the Miller's Pond proposal and a competing proposal filed in February, 1998, by the city of New London for the upstream diversion of

---

[1] The plaintiff filed the application jointly with Waterford Country School, Inc., a nonprofit institution that, according to the plaintiff, "owns the only other portion of the water body not owned by Miller's Pond, LLC," and the Connecticut Water Company, described by the plaintiff as the operating partner.

water from Hunts Brook.[2] The official anticipated that a decision would be made to reject both proposals or to accept one and reject the other.

In December, 1998, the department sent a letter to the city of New London entitled "Notice of Insufficiency," in which it stated that the Hunts Brook application was "insufficient for processing" and that the department would halt processing until the insufficiencies described in the notice had been corrected. Meanwhile, the department did not act on the Miller's Pond application.

On September 3, 1999, the plaintiff filed a mandamus action seeking to compel the department to process its application. Approximately six weeks later, on October 20, 1999, the department issued a letter to the plaintiff entitled "Rejection Notice," stating that the plaintiff's application was "insufficient for processing and is hereby rejected pursuant to section 22a-3a-2 (e)[3] of the Regulations of Connecticut State Agencies." The letter described the application as "insufficient" because it failed to include the New London Water and Water Pollution Control Authority (NLWWPCA), a potential

---

[2] The record contains a memorandum to the file dated June 3, 1998, from an employee of Baystate Environmental Consultants describing her meeting with a department official to discuss the Miller's Pond application.

[3] Section 22a-3a-2 (e) of the Regulations of Connecticut State Agencies provides in relevant part: "The Commissioner may reject an application . . . as insufficient if it does not meet the requirements of Section 22a-3a-4 (a) or 22a-3a-5 (a), respectively, of these Rules of Practice, or does not meet the requirements of any other applicable provision of law governing the form, contents, and filing of such application or petition, or is so manifestly insufficient as to make further processing impossible. Except as otherwise provided by law . . . a rejection under this subsection shall stop the running of any time period which by law begins to run when the department receives an application . . . any such period shall begin anew when the department receives an amended application . . . . Nothing shall preclude the Commissioner from requiring additional information from an applicant . . . if the application . . . is not rejected under this subsection or is deemed sufficient."

user of the diverted water, as a "co-applicant" in accordance with § 22a-377 (c)-2 (g)[4] of the regulations. The letter stated that the NLWWPCA would be required to sign and certify "an amended permit application" and that the applicants would be required to "re-notice" the application. If the plaintiff proposed to convey the water to some other user, it must affirmatively state this intent and describe the proposal in specific detail with full disclosure in the public notice. The letter also identified numerous other "substantive problems" with the application. The letter nonetheless advised that "[t]his rejection does not prejudice you from filing a new application" in which the insufficiencies would be corrected and included an attachment describing new public notice requirements for permit applications. There is no evidence in the record that the commissioner sent notice of, or conducted a public hearing prior to, or following, the issuance of the rejection letter.

The plaintiff appealed to the Superior Court, claiming, inter alia, that the commissioner improperly failed to deem the application complete or insufficient and to hold a public hearing pursuant to General Statutes § 22a-371 before making a final determination to reject the application. The court concluded, in a memorandum of decision dated April 3, 2001, that the notice of rejection did not constitute a final decision in a contested case and, consequently, the court did not have subject matter jurisdiction to hear the appeal. "The legal right or privilege at issue here is the plaintiff's right or privilege to obtain a permit for water diversion and graveling operations from the [department]. . . . The October 20, 1999 rejection notice, however, did not adjudicate that right. It indicated that the application, as submitted

---

[4] Section 22a-377 (c)-2 (g) of the Regulations of Connecticut State Agencies provides in relevant part: "If the applicant for a permit will not be the user of all or a portion of the waters proposed to be diverted, the applicant and users shall jointly make application for the permit. . . ."

by the plaintiff, was insufficient and could not be processed because it did not contain information required by agency regulations. Even if the plaintiff had a legal right or privilege to a determination that its application is complete, the plaintiff does not have a right to appeal unless the [department] was statutorily required to make such a determination following a hearing or an opportunity for a hearing."

The court observed that the law provides, pursuant to § 22a-371, that if the commissioner finds that an application is complete, he shall notify the applicant and hold a public hearing before approving or denying the application, but that the provision does not require the commissioner "to hold a hearing on the matter of whether an application is complete. . . . Accordingly, as the rejection notice was not issued in a contested case, there is no final decision . . . from which the plaintiff can appeal."

The court concluded that the plaintiff had an adequate remedy at law because the notice of rejection advised that the applicant could file " 'a new application in which the above insufficiencies have been corrected.' . . . Therefore, the plaintiff has yet to have its application processed and its rights adjudicated through the administrative process of the [department]. Accordingly, the plaintiff . . . fails to satisfy the exhaustion requirement of General Statutes § 4-183 (a)."

The court further concluded that it could not consider the merits pursuant to § 4-183 (b), which provides for jurisdiction in exceptional circumstances even if a party has failed to exhaust its administrative remedies, because there were no exceptional circumstances indicating that postponement of the appeal would result in an inadequate remedy. "The plaintiff fails to demonstrate how submitting a new application with the information required by the [department] and postponing

the appeal until a final decision on the merits is rendered by the [department], would be futile or an inadequate remedy. The [department] stated in the rejection notice that once the plaintiff corrects the insufficiency, it can submit a new application for processing." The court then determined that, because the plaintiff had failed to satisfy the requirements of § 4-183 (a) or (b), it lacked subject matter jurisdiction to hear the appeal. This appeal followed.

The plaintiff claims that the court improperly dismissed its appeal for lack of subject matter jurisdiction. The plaintiff claims that it appealed from the commissioner's final decision in a contested case and that there is no adequate remedy at law. The plaintiff thus claims that it has met the requirements for an appeal under § 4-183. We agree.

We first consider the applicable standard of review. "A determination regarding a trial court's subject matter jurisdiction is a question of law. When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Doe* v. *Roe*, 246 Conn. 652, 660, 717 A.2d 706 (1998).

General Statutes § 4-183 (a) provides in relevant part: "A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the Superior Court as provided in this section. . . ." Section 4-166 (3) defines the term final decision as "(A) the agency determination in a contested case, (B) a declaratory ruling issued by an agency pursuant to section 4-176 or (C) an agency decision made after reconsideration. . . ." Section 4-166 (2) defines a contested case as "a proceeding . . . in which the legal rights, duties or privileges

of a party are required by statute to be determined by an agency after an opportunity for hearing or in which a hearing is in fact held . . . ." "Three criteria are considered in determining contested case status: (1) whether a legal right, duty or privilege is at issue, (2) [that] is *statutorily required* to be determined by [an] agency, (3) through an opportunity for a hearing . . . ." (Emphasis added; internal quotation marks omitted.) *In re Baby Z.*, 247 Conn. 474, 491, 724 A.2d 1035 (1999).

Here, the court concluded that the first criterion in determining contested case status was satisfied because "[t]he legal right or privilege at issue here is the plaintiff's right or privilege to obtain a permit for water diversion and graveling operations from the [department]." The court deemed the second two criteria not satisfied, however, when it determined that the provisions of § 22a-371 leave to the commissioner's discretion the decision to hold a hearing on whether an application is complete.

General Statutes § 22a-371 provides in relevant part: "(a) Within one hundred twenty days of receipt of an application for a permit, the commissioner shall determine if there is any additional information that he deems necessary to carry out the purposes of sections 22a-365 to 22a-378, inclusive. The applicant shall provide such information to the commissioner upon request or may request that the application be deemed complete as is.

"(b) If the applicant does not furnish the requested information, the commissioner shall publish notice of his tentative determination on the application in accordance with section 22a-6h[5] and shall hold or waive a

---

[5] General Statutes § 22a-6h is entitled "Notice of tentative determination re permit application" and provides in relevant part: "(a) The Commissioner of Environmental Protection, at least thirty days before approving or denying an application under section . . . 22a-368 . . . shall publish or cause to be published, at the applicant's expense . . . notice of his tentative determination regarding such application. Such notice shall include . . . the tenta-

public hearing in accordance with the provisions of subsection (f) of this section.

   "(c) If the commissioner finds that an application is complete, he shall notify the applicant by certified mail, return receipt requested. The commissioner shall also notify the applicant of the time, date and location of any public hearing to be held on the application.

                           * * *

   "(f) The commissioner shall hold a public hearing before approving or denying an application, except that, when the commissioner determines that the proposed diversion (1) is necessary, (2) will not significantly affect long-range water resource management or the environment, and (3) will not impair proper management and use of the water resources of the state, he may waive the requirement for a hearing . . . ."

tive decision regarding the application . . . ."

   General Statutes § 22a-6p is entitled "Time frames for issuance of permits. Regulations." That section provides in relevant part: "The Commissioner of Environmental Protection shall adopt regulations . . . establishing schedules for timely action for each application for a permit for activity regulated under this title. . . . Each such schedule shall contain the following:

   "(1) A provision that the schedule shall begin when an application is received by the Department of Environmental Protection, any public notice requirements have been fulfilled and the application fee is paid;

   "(2) One or more periods of reasonable length, based on the nature and complexity of the review required of the department, at the end of which time the department shall issue a decision to grant or deny the permit or identify deficiencies in the application, provided the schedule may also reasonably limit the amount of time in which the applicant may remedy such deficiencies;

   "(3) A period of reasonable length, based on the nature and complexity of the review required of the commissioner, beginning with receipt of materials submitted by the applicant in response to the commissioner's identification of deficiencies, at the end of which time the commissioner shall issue a tentative determination to grant or deny the permit;

   "(4) A period of reasonable length after such tentative determination and the conclusion of any public hearing held with regard to such decision . . . ."

In the present case, instead of following the procedure prescribed by the governing statutory provisions, the commissioner issued a notice of rejection under § 22a-3a-2 (e) of the regulations that ended the proceeding without a hearing based on his determination that the application was "insufficient for processing." Rejection on that basis was improper. Section 22a-3a-2 (e) is one of the early sections of the department regulations entitled "Rules of Practice." Section 22a-3a-2 is entitled "General" and is, therefore, a regulation of general applicability that governs the processing of applications not subject to more specific statutory and administrative guidelines. Indeed, § 22a-3a-2 (b) (1) of the regulations expressly limits the applicability of § 22a-3a-2 (e) by providing that the rules of practice govern department proceedings "unless otherwise provided by law . . . ."

The governing statutes in the present case are General Statutes §§ 22a-371, 22a-6n and 22a-6p, and the governing regulation is § 22a-377 (c)-2 (a) (3).[6] That regulation pertains solely to applications for permits under the Connecticut Water Diversion Policy Act and expressly cites § 22a-371 (b) of the General Statutes, with its hearing requirement. It is a well settled principle of statutory construction that "specific terms covering the given subject matter will prevail over general language of the same or another statute which might otherwise prove controlling."[7] (Internal quotation marks

---

[6] Section 22a-377 (c)-2 (a) (3) of the Regulations of Connecticut State Agencies provides: "If at any time during review of an application the Commissioner, pursuant to section 22a-371 (a) of the general statutes, requests additional information from the applicant, the applicant shall provide such information within four months of the request. Unless the information is provided within such time the Commissioner shall return the application to the applicant in accordance with section 22a-371 (b) of the general statutes."

[7] "[O]ur rules of statutory construction apply to administrative regulations." (Internal quotation marks omitted.) *Andersen Consulting, LLP* v. *Gavin*, 255 Conn. 498, 512, 767 A.2d 692 (2001).

omitted.) *State* v. *State Employees' Review Board*, 239 Conn. 638, 653, 687 A.2d 134 (1997).

Under the plain language of General Statutes §§ 22a-371, 22a-6h and 22a-6p; see footnote 5; the commissioner was required to give the applicant an opportunity to remedy any identified deficiencies in its application or to request that the application be deemed complete as submitted. If the plaintiff did not furnish the requested information or remedy the deficiencies, the commissioner was required by statute to publish notice of his tentative determination on the application and to hold a public hearing before making a final decision to grant or deny the application. If the applicant requested that the application be deemed complete as submitted, the commissioner was required to hold a public hearing on the application as deemed complete pursuant to subsection (c) of § 22a-371. The only exception to this procedure, not applicable here, is if the hearing requirement is waived in accordance with subsection (f) of § 22a-371. Accordingly, because the commissioner did not give the plaintiff an opportunity to remedy the application's deficiencies, or to request that the application be deemed complete as submitted and have those deficiencies examined in the forum of a public hearing, the plaintiff was aggrieved by the commissioner's failure to hold such a hearing, and the case is contested pursuant to § 4-166 (2).

The commissioner's rejection of the application is also a final decision from which an appeal may be taken pursuant to § 4-183 because the rejection effectively terminated the proceeding. The department's letter to the plaintiff stated that the rejection did not prejudice the plaintiff from filing a new application in which the insufficiencies had been corrected. The court similarly noted in its memorandum of decision that the plaintiff had the option of filing a new application following its receipt of the rejection notice. Absent any other comment in the letter indicating that the plaintiff could

choose to proceed under the statutory scheme by requesting that the application be deemed complete as submitted, or by providing the additional information requested without filing an entirely new application, the rejection notice constituted a final determination. This conclusion is supported by § 22a-3a-2 (c) (2) of the regulations, which provides that "[a] proceeding *terminates* when (A) the Commissioner issues a *final decision* in a contested case . . . [or] (F) the Commissioner *rejects an application for insufficiency* pursuant to subsection (e) of this section or any other provision of law . . . ." (Emphasis added.)

The commissioner nonetheless argues that a hearing must be held for an appeal to lie. He argues that since no such hearing was held before he rejected the application, there is no final decision from which the plaintiff may appeal. We do not agree.

Under the statutory scheme, a hearing need not be held for an appeal to lie. This court has previously stated, in a similar factual and legal context, that contested case status does not depend on whether a hearing has been held; *Dadiskos* v. *Connecticut Real Estate Commission*, 37 Conn. App. 777, 782, 657 A.2d 717 (1995) (hearing not statutorily mandated, even if gratuitously held, does not create contested case); or whether a hearing is required by an agency rule, policy or regulation. *Terese B.* v. *Commissioner of Children & Families*, 68 Conn. App. 223, 235, 789 A.2d 1114 (2002) (agency rule, policy or regulation that requires hearing does not alone qualify proceedings as contested case). The significant fact from a legal standpoint is whether a hearing is *statutorily required.* See *In re Baby Z.*, supra, 247 Conn. 491. Here, § 22a-371 (b) unquestionably provides that the commissioner "*shall hold*" a public hearing before making a final determination on a permit application unless waived in accordance with subsection (f). Subsection (f) does not apply in this

case. We, therefore, conclude that the commissioner's notice of rejection was a final decision for appeal purposes, despite the absence of a public hearing.

The commissioner also argues that General Statutes § 22a-374 provides a right to appeal only if an application is deemed incomplete for lack of substantive information, and not, as in the present case, if it merely "failed to meet the legal requirements of form." The commissioner argues that the plaintiff's failure to include the city of New London as a co-applicant is the same type of "legal" deficiency as an omission of the applicant's name, address or telephone number, all allegedly matters of incorrect form, and that the plaintiff may not appeal on that basis. This claim has no merit.

Section 22a-369 of the General Statutes provides in relevant part that "[t]he applicant shall submit an application *on such form* as the commissioner may prescribe and with such information as the commissioner deems necessary . . . ." (Emphasis added.) Section 22a-377 (c)-2 (a) (1) of the Regulations of Connecticut State Agencies similarly requires that "[a]n application for a permit to divert water shall be made on *a form* available from the Commissioner . . . ." (Emphasis added.)

"[S]tatutory language should be given its plain and ordinary meaning. . . . We refrain from reading into statutes provisions that are not clearly stated and interpret statutory intent by referring to what the legislative text contains, not by what it might have contained." (Internal quotation marks omitted.) *DiBello* v. *Barnes Page Wire Products, Inc.*, 67 Conn. App. 361, 368, 786 A.2d 1234 (2001), cert. granted on other grounds, 260 Conn. 915, 796 A.2d 560 (2002) (appeal withdrawn June 26, 2002).

The plain language of General Statutes § 22a-369a clearly contemplates a distinction, not between legal and substantive information, but between the applica-

tion form and the information deemed necessary to evaluate the permit request. Moreover, the notice rejecting the plaintiff's application did not note any deficiency of "form," but simply described the application as "insufficient for processing," the same language that was used when the department returned, but did not reject, the Hunts Brook application.

Furthermore, the commissioner has cited no statute or regulation that distinguishes between different types of information that may be required in a water diversion permit application, or that would serve as a basis for different levels of department review, and we are aware of none. Had the legislature intended to grant the commissioner discretionary power to make "threshold" determinations of insufficiency without a hearing, it could have done so expressly.

It is a well established principle of statutory construction that the words of a regulation must be interpreted as written.[8] *Vecca* v. *State*, 29 Conn. App. 559, 565, 616 A.2d 823 (1992). It is not what a statute or a regulation might have said or should have said that controls, but what, in fact, it actually says. Id. The construction urged by the commissioner would grant to him a power that he does not have, i.e., to reject a water diversion permit application under § 22a-3a-2 (e) of the regulations without giving the applicant an opportunity to respond, and without a public hearing, if the application is simply deemed "insufficient." The majority refuses to adopt such an interpretation because we cannot, by judicial construction, read into the regulations or relevant statutes a provision that does not exist. Id. To read the regulation as granting the commissioner the discretion to make a threshold determination of sufficiency, as

---

[8] "We interpret the regulations of an administrative body pursuant to the principles of statutory construction." (Internal quotation marks omitted.) *Prioli* v. *State Library*, 64 Conn. App. 301, 308, 780 A.2d 172, cert. denied, 258 Conn. 917, 782 A.2d 1246 (2001).

urged by the dissent, is an invitation to reject as insufficient any application not consonant with department policy, thus rendering the hearing requirement of § 22a-371 meaningless.[9] We therefore conclude that the plaintiff's appeal from the commissioner's decision was properly taken.

Finally, the plaintiff had exhausted its administrative remedies under § 4-183 because the commissioner's rejection of the application was a final decision in a contested case. We are mindful that § 22a-374[10] of the Water Diversion Policy Act provides for an appeal to the Superior Court only if an applicant is aggrieved by a decision pursuant to General Statutes § 22a-373 or the return of an application by the commissioner as incomplete pursuant to the provisions of subsection (b) of § 22a-371, and that, here, the commissioner rejected the application pursuant to § 22a-3a-2 (e) of the regulations. The commissioner's failure to follow the proper statutory procedure, however, should not preclude the plaintiff from filing an appeal from the commissioner's final decision rejecting the application. We therefore conclude that the plaintiff had exhausted its administra-

[9] The inequities that could result when the commissioner is granted such broad discretion may be seen in a comparison of the "rejection notice" that was sent to the plaintiff regarding the Miller's Pond application, and the "notice of insufficiency" that was sent to the city of New London regarding the Hunts Brook application. Although each of the letters described the subject application as "insufficient for processing," the plaintiff's application was rejected, while the city of New London was given an opportunity to submit additional information to correct the insufficiencies in its application.

[10] General Statutes § 22a-374 provides in relevant part that "[a]ny person or municipality aggrieved by the decision of the commissioner made pursuant to section 22a-373 or the return of an application by the commissioner as incomplete pursuant to the provisions of subsection (b) of section 22a-371, may appeal to the Superior Court pursuant to the provisions of section 4-183 . . . ."

General Statutes § 22a-373 (a) provides in relevant part: "The commissioner shall, within one hundred and twenty days of the close of the hearing, make a decision either granting or denying the application as deemed complete in section 22a-371 . . . ."

tive remedies because the rejection notice offered the plaintiff no other recourse but to file an entirely new application. Accordingly, the court had jurisdiction to hear the appeal.

The judgment is reversed and the case is remanded with direction to remand the matter to the commissioner for further proceedings pursuant to § 22a-371.

In this opinion HENNESSY, J., concurred.

SCHALLER, J., dissenting. I would affirm the judgment of the trial court dismissing this administrative appeal for lack of jurisdiction because I disagree with the majority conclusion that the commissioner's rejection for insufficiency was a final judgment in a contested case giving the trial court jurisdiction to entertain the appeal.

As a matter of law, I believe the majority's conclusion that a contested case exists and that the applicant was entitled to a hearing is incorrect. The majority states that it was improper for the commissioner to issue a rejection without a hearing because under General Statutes § 22a-371, the commissioner was required to give the applicant an opportunity to remedy any deficiencies or request that the application be deemed complete and then hold a hearing before rendering a final decision. The majority further concludes that the commissioner improperly used § 22a-3a-2 (e), a regulation of "general applicability," in rejecting the application in this case. The majority offers its view that "[t]he commissioner should have made his determination pursuant to § 22a-377 (c)-2 (a) (3) of the regulations because that is a regulation that specifically relates to the Water Diversion Policy Act, General Statutes §§ 22a-365 to 22a-378.

I disagree with both of these conclusions. With regard to § 22a-371, the majority decision, in essence, revokes the authority of the commissioner to make a threshold

determination, under § 22a-3a-2 (e), of the viability of an application. I am not aware of any valid basis in statutory interpretation or other law that allows a court effectively to eliminate § 22a-3a-2 (e) from the regulations and, in the process, to deprive the commissioner of the authority to screen applications for fundamental compliance. With reference to § 22a-377 (c)-2 (a) (3), the majority overlooks the fact that § 22a-3a-2 (e) and this regulation perform entirely different functions. I conclude that the two regulatory sections are not distinguished as general versus specific, but rather operate at different stages of the application process. This conclusion is consistent with the well settled rule of statutory construction, also applicable to regulations, that different sections should be construed in a manner that achieves harmony. See *Dept. of Income Maintenance* v. *Watts*, 211 Conn. 323, 328, 558 A.2d 998 (1989) (noting principle of statutory construction "that statutes in apparent conflict should be construed so as to achieve harmony between them" and that statutes "must be construed, if possible, so that both will be operative").

On the basis of my reading of the applicable statutes and regulations, I conclude that § 22a-3a-2 (e) provides the commissioner with two options when faced with an insufficient application. The commissioner may reject an application as insufficient if it does not meet governing provisions of law or is so manifestly insufficient, for example, when the applicant does not have sufficient interest or standing, that further proceedings are not possible. Under § 22a-3a-2 (e), the commissioner, however, may also deem the application sufficient or not reject it under this subsection. In that event, the regulation provides that nothing shall preclude the commissioner from requiring additional information from the applicant. Should the commissioner choose not to reject the application, it is implicit that he has

determined that, while he may need more information before ruling on the application, it is not so defective that it must be rejected. I conclude, therefore, that § 22a-3a-2 (e) is a threshold regulation that allows the commissioner either to reject an application or to keep it active, with the option to request more information.

The next step in the analysis is to determine how the commissioner proceeds to procure additional information. I believe that §§ 22a-371 and 22a-377 (c)-2 (a) (3) are applicable here. Section 22a-371, entitled "request for additional information," applies when the commissioner decides to not reject the application but also wants more information. Consistent with § 22a-3a-2 (e), § 22a-371 (a) requires that the commissioner, having received the application, determine within one hundred and twenty days whether he requires more information. Section 22a-377 (c)-2 (a) (3) operates as a corollary to this, providing that if the commissioner requests information pursuant to § 22a-371 (a), the applicant must provide it within four months. It is clear that § 22a-377 (c)-2 (a) (3) serves a different function from the "gate keeping" purpose of § 22a-3a-2 (e). While the majority contends that § 22a-377 (c)-2 (a) (3) specifically governs applications such as the one at issue, I believe that it applies only after an application has passed the threshold determination of § 22a-3a-2 (e). At that point, the commissioner has decided to maintain the application, subject to requesting more information. The commissioner then may request more information, under § 22a-371 (a), as he considers the application. As a counterpart, § 22a-377 (c)-2 (a) is designed to provide the applicant with a limited period of time in which to produce the requested material.

I next address the hearing requirement. I first note that in addition to the functions noted, § 22a-377 (c)-2 (a) (3) goes on to state that if this information is not provided, the commissioner will return the application

in accordance with § 22a-371 (b). Section 22a-371 (b) provides that in the absence of the information, the commissioner shall provide a tentative decision and then hold a hearing. On the basis of this construction of the statute and regulations, I believe that the hearing requirement in § 22a-371 (b) is implicated only when the commissioner decides not to reject the application under § 22a-3a-2 (e), requests more information under § 22a-371 (a) and is not provided with it under § 22a-377 (c)-2 (a). At that point, a hearing is appropriate because the commissioner, having decided to maintain the application, has determined that a decision can be rendered on the application and has received all the information he can expect from the party. If the commissioner tentatively denies the application for lack of information or otherwise, a hearing is necessary in order to determine how to proceed.

I note that this reading of the provisions is also consistent with the appeals provision, General Statutes § 22a-374. This section, in part, allows an appeal to be taken when the commissioner returns an application as incomplete pursuant to § 22a-371 (b). Under this provision, an applicant can appeal from the commissioner's decision regarding the completeness of the application after the commissioner has first decided to maintain the application pursuant to § 22a-3a-2 (e) and then rendered his tentative judgment on it. An appeal is appropriate at that time because the commissioner has already determined that the application is sufficient to enable a decision to be made.

On the basis of the foregoing, I conclude that when the commissioner rejects an application outright under § 22a-3a-2 (e), § 22a-371 does not come into play. No hearing, therefore, is required in that situation. Furthermore, the § 22a-374 right to appeal is not implicated in such a case because it rests upon § 22a-371. This interpretation falls within our well settled canon of statutory construction that statutes, and regulations, in

apparent conflict should be construed in a manner that achieves harmony between them. See *Dept. of Income Maintenance* v. *Watts*, supra, 211 Conn. 328. In the present case, I would conclude, contrary to the majority, that a hearing was not required because the commissioner decided to reject the application as insufficient under § 22a-3a-2 (e). Without the right to a hearing, the trial court lacked jurisdiction to hear the appeal.

I also disagree on a procedural level with the majority resolution of this case. I begin by noting that at its core, the plaintiff's appeal actually challenges the failure of § 22a-3a-2 (e) to provide for a hearing when the commissioner decides to reject an application as insufficient. On appeal, however, the plaintiff has failed to raise a due process challenge to the regulation, or to attack § 22a-3a-2 (e) by any other means. Instead of challenging § 22a-3a-2 (e), the plaintiff has launched an indirect attack on the regulation. It contends that there is no meaningful distinction between an insufficiency rejection pursuant to that regulation and an incompleteness determination pursuant to § 22a-371, and that the right to a hearing overrides the regulation.

While the majority apparently accepts that assertion, I do not believe that the plaintiff's implicit attack gives us license to determine the validity or viability of § 22a-3a-2 (e). Absent a specific claim challenging the applicability of § 22a-31-2 (e) or the failure of § 22a-3a-2 (e) to provide for a hearing, these issues are not before us. Since the plaintiff has not challenged § 22a-3a-2 (e) in this proceeding, our function is only to provide an interpretation based on our well settled rules of statutory construction that makes sense of the regulation, considered in light of the entire statutory and regulatory scheme. See id. Consistent with our responsibility under these circumstances, I interpret § 22a-3a-2 (e) to enable the commissioner to reject an application that fails to meet the fundamental requirements for consideration.

I also disagree with the majority decision because of the practical effect it will have on the commissioner's discretion in the application process. I first note that § 22a-3a-2 (e) obviously serves a vital function in allowing the commissioner to exercise the discretion authorized by statute to reject, without the necessity of a public hearing, applications that are deficient because they fail to include basic predicates that are essential to consideration of the merits of the application. It would be bizarre, indeed, if the commissioner were to be required to hold a public hearing on each and every application, no matter how deficient. For example, must the commissioner hold a public hearing before rejecting an application that failed to contain the applicant's full name, capacity, address and signature? Similarly, if an individual citizen were to submit an application for diversion of a water source without further explanation, would that individual be entitled to a public hearing, simply because an application was filed?

Despite the importance of § 22a-3a-2 (e) as a regulation dealing with threshold requirements, it would appear that under the majority opinion, no rejection of any application can take place without a public hearing because the result of the decision is to bypass and effectively to eliminate the commissioner's discretion. I believe that this result is incorrect because the commissioner's discretion is properly vested in him by virtue of the applicable statutes through § 22a-3a-2 (e) and is essential to enable the commissioner to carry out the purposes of the Water Diversion Policy Act.

Moreover, I believe it is improper to require the commissioner to hold public hearings on fundamentally deficient applications before rejecting them because such a hearing creates General Statutes § 4-183 appeal rights for applicants who have failed to conform to even the basic requirements for administrative action. Applicants who fail to provide the information neces-

sary to meet the fundamental requirements of form should not be entitled to a § 4-183 appeal because that information is necessary to the actual consideration of the application. As a result, an appeal to the trial court at this stage would not address any substantive decision. Rather, it would mire the courts in matters of administrative form and preliminary conditions that must be met before any substantive action can be taken. I believe such issues should be dealt with prior to any appeal to the courts in the absence of a direct challenge to the regulation in question. As such, I do not believe that an applicant should be able to appeal from the commissioner's decision without meeting the threshold requirements that are necessary to enable a determination on the merits of the application.

I would also note that this concern is borne out in the present case, in which the plaintiff has failed to show that it can satisfy the application requirements without joining the New London Water and Water Pollution Control Authority (NLWWPCA). The plaintiff has failed to do so because of the evident practical problem it faces in this case, namely, that the proposed user whose signature is required on the application, the NLWWPCA, is a competitor and unlikely to join voluntarily in the application. The plaintiff undoubtedly suspects that if it must join that entity in the application process, it will not be able to obtain a determination on the merits of its application. I do not believe that such problems can legitimately be dealt with in the present appeal.

Despite my present concerns, the majority states that my construction is "an invitation to reject as insufficient any application not consonant with department policy." The majority further contends that the return without rejection of the NLWWPCA's application and the rejection of the plaintiff's application illustrate the inequitable exercise of discretionary authority by the commissioner under § 22a-3a-2 (e). To the contrary, the actions considered together constitute consistent and

fair action. The Miller's Pond application was rejected without a request for further information on that application because it was fatally deficient in lacking a fundamental prerequisite—the acquiescence of the water company that was the proposed user of the water that Miller's Pond sought permission to divert. Without that basic consent to the application, the Miller's Pond application was meaningless. On the other hand, New London's application was filed by the actual proposed user involved and therefore complied with basic requirements. No hearing of the Miller's Pond application could remedy the fatal deficiency. The Miller's Pond application could not go forward unless it secured the agreement of the ultimate user of the water.

For all the foregoing reasons, I conclude that the rejection of the plaintiff's application for insufficiency did not confer jurisdiction on the trial court for purposes of an appeal under the Uniform Administrative Procedure Act, General Statutes § 4-166 et seq. I would affirm the judgment of the trial court.