[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an appeal brought by the City of Hartford, the Friends of Elizabeth Park and the Food Group, LLC, from an action of the town council of the Town of West Hartford, acting as the town's zoning authority. It is agreed that the City of Hartford owns Elizabeth Park, which is approximately a hundred acre parcel, twenty acres of which are located within the City of Hartford and the remainder within the Town of West Hartford. Through contractual agreements, the other plaintiffs have CT Page 10363 an interest in restaurant and "auditorium" uses of the Pond House, built by the City of Hartford within the West Hartford portion of the park in 1959. A special use permit issued in 1995 apparently allowed some expansion in the use of the Pond House.
In response to allegedly improper use of the Pond House, the Town of West Hartford issued a cease and desist order in 2000 or 2001. In response to the order, representatives of the city and the town tried to reconcile their differences. In 2001, the West Hartford town council approved two new zones: the Elizabeth Park zone, consisting of the park, and a special development district within the Elizabeth Park zone, consisting of 2.12 acres on which the Pond House and the primary access to the Pond House from Asylum Avenue are situated. A number of conditions were attached to uses within the special development district; among other considerations, limitations were placed on hours of operation and the serving of alcoholic beverages, such that such service was curtailed to the restaurant function of the Pond House. The town's action took place on August 14, 2001; the plaintiffs in this action appealed shortly thereafter.
The parties have continued to negotiate during the pendency of the appeal; a local election also took place in November, 2001, and membership of the council changed. For whatever reason, the parties to the appeal have reached an agreement and have submitted their proposed agreement to the court in order to schedule a hearing for approval pursuant to §8-8 (m) of the General Statutes. The proposed agreement changes some of the conditions of operation of the Pond House, the most salient of which allow the service of wine and beer at the "auditorium", apparently used for banquet functions, and which expand operating hours to a degree.
Meanwhile, various neighbors of the park had taken an active interest. People expressed various points of view regarding uses of the park in the course of hearings before the council. Eleven neighbors now seek to intervene in the appeal to become party defendants. They claim, essentially, that they would have appealed at the time the council initially approved the zones and conditions if the council had initially enacted the conditions which are included in the proposed settlement. The current parties vigorously oppose intervention for a variety of reasons.
The putative intervenors seek to be joined by way of permissive intervention pursuant to § 52-102 of the General Statutes and do not claim intervention as of right. See, e.g., Horton v. Meskill, 187 Conn. 187
(1982). There of course is no right to intervene simply because a proposed action will likely have some effect on the enjoyment of one's property.
CT Page 10364 The consideration of permissive intervention involves numerous factors including the timeliness of the intervention, the proposed intervenor's interests in the controversy, the adequacy of representation of such interests by existing parties, the delay in the proceedings or other prejudice to the existing parties the intervention may cause, and the necessity for or value of the intervention in terms of resolving the controversy before the court. See Fed.R.Civ.Proc. 24(b). Horton v. Meskill, 187 Conn. at 197 (1982).
I believe the list is illustrative of the factors to be considered in the ultimate determination of whether permissive intervention is appropriate in the circumstances presented. It should be noted as well that for the purposes of determining intervention, the facts alleged by the putative intervenor are taken to be true. Rosado v. Bridgeport RomanCatholic Diocesan Corp. , 60 Conn. App. 134, 142 (2000). Most of the facts which are material to the instant issue are not disputed in any event.
The first factor briefed and argued by most of the parties is timeliness. The existing parties suggest that the proposed intervention is not timely because the appeal itself was brought in August, 2001, and, perhaps most critically, the matter is now ripe for resolution if intervention is denied. Intervention was not sought until the instant motion was filed on May 16, 2002. On the other hand, the putative intervenors suggest that they were more or less satisfied with the state of affairs until they heard of negotiations between the parties and the possibilities of compromise, and after that point they moved with reasonable dispatch. Each side argues that this factor is favorable to it. The resolution, of course, depends on the point of view. From the viewpoint of the existing parties, the proposed intervention is late because the appeal has been pending for approximately a year — about nine months when the intervention was sought — and that the existing parties have reached an agreement that would presumably end the dispute. From the viewpoint of the putative intervenors, the action is timely because they acted fairly quickly after they were aware of a change in the town's position. Overall, I believe that the timeliness factor slightly favors the putative intervenors, in light of the admonition of Rosado to accept, as a general proposition, the allegations of the proposed intervenors as true.
The second factor is the interest of the proposed intervenors in the controversy. Interest, as noted above, means more than an "interest" as the word might be used in ordinary speech. To this end, in the course of writing this decision I asked the clerk to request the parties to brief the specific question of whether, in the circumstances presented, the CT Page 10365 proposed intervenors would have had standing to appeal from the decision of the town council. Though in itself standing to appeal may not be determinative, the question is a useful factor to consider, because it may illuminate the public policy of the state regarding objective intensity of interest. Each of the proposed intervenors lives within 100 feet of Elizabeth Park, but none of them lives within 100 feet of the 2.12 acre parcel designated as the special development district to which the disputed regulations apply. An issue, then, is whether § 8-8 (a)(1), which provides that those owning land "within a radius of one hundred feet of any portion of the land involved in the decision of the board" bestows statutory aggrievement.[1]
Each of the parties who responded concluded, with differing degrees of certainty, that Caltabiano v. Planning Zoning Commission of the Town ofSalem, 211 Conn. 662 (1989), provides authority for the proposition that the proposed intervenors probably are statotorily aggrieved. InCaltabiano, the planning and zoning commission had approved excavation activity in a parcel of land consisting of 110 acres, but the actual excavation would occur only on a 3.8 acre parcel "deep within" the parcel. The plaintiffs lived across the street from the parcel itself but more than one thousand feet from the site of the excavation. Our Supreme Court construed the phrase "the land involved" to mean the entire parcel rather than only the interior segment on which the activity in issue occurs, and thus found statutory aggrievement. By analogy, the intervening parties in this action would appear to be statutorily aggrieved.
In any event, for the purpose of considering permissive intervention, the interest of the putative intervenors is significant. In addition to probably being statutorily aggrieved, they state that they participated in the former hearings and that they would have appealed from the decision of the town council a year ago if it had consisted of the terms of the currently proposed settlement. Though perhaps such representations should be taken with a grain of salt, in that it is easy to say what one would have done in different circumstances, I nonetheless find that the interest of the proposed intervenors is entitled to some weight.
The next factor to consider is the consideration of whether the proposed intervenors' interests are adequately represented by parties already in the case. Once again, any conclusions regarding this factor depend on one's point of view. The existing parties argue that the obligation of the town's representatives is to represent all of the public's interests fairly, and, by balancing various interests, they are in fact doing so. The putative intervenors argue that, in the circumstances of this action, their interests have been at first largely endorsed and then largely abandoned by the town, and thus their specific CT Page 10366 interests in this case are not at this time being represented at all by the existing parties. I do not find that this factor weighs heavily for either side: while recognizing the general obligation of the town to represent all interests fairly; see, e.g., Tazza v. Planning ZoningCommission, 164 Conn. 187, 192 (1972); and the availability of a public hearing pursuant to § 8-8 (m) of the General Statutes; see, e.g.,Brookridge District Ass'n. v. Planning Zoning Commission, 259 Conn. 607
(2002); I also recognize the common sense position of the proposed intervenors.
The fourth factor specifically mentioned in Horton is the delay and prejudice to existing parties. As a practical matter, this factor weighs quite heavily against intervention. The existing parties have resolved the controversy among themselves and have requested a hearing pursuant to § 8-8 (m)[2] of the General Statutes. If intervention is granted, I have little doubt as to whether the proposed intervenors will acquiesce in the settlement as currently formulated. It is quite certain that a settlement cannot be approved, regardless of the availability of a public hearing pursuant to § 8-8 (m), if a party objects. See RaltoDevelopers, Inc. v. Environmental Impact Commission, 220 Conn. 54, 57-61 (1991); Centennial Development, Inc. v. Town of Farmington, 8 CSCR 807
(1995) (Berger, J.). Although it is possible that the settlement would not be endorsed after a hearing pursuant to § 8-8 (m) even if intervention is not allowed, I nonetheless find that intervention would likely cause considerable delay and prejudice to the existing parties.
The final Horton factor is the necessity or value of intervention in terms of resolving the controversy. Purely in terms of resolving the controversy and ending the appeal, it of course is apparent that denying intervention would likely be most beneficial. I believe that the most critical consideration, however, is that the controversy be resolved not only expeditiously, but also fairly and equitably. If resolution for its own sake were the decisive factor, then permissive intervention would be a hollow remedy, as it is difficult to imagine a scenario in which allowing intervention would promote speedy resolution of a controversy.
The position of the existing parties is that denying intervention is not unfair, because the intervenors still would have the right to participate in a hearing pursuant to § 8-8 (m) to argue that the proposed settlement is not appropriate. See, e.g., Brookside DistrictAss'n, supra; Sendak v. Planning Zoning Commission, 7 Conn. App. 187
(1986); Willimantic Car Wash, Inc. v. Zoning Board of Appeals,247 Conn. 732 (1999). The proposed intervenors argue that although the public hearing would have some salutary effect in that it would protect against fraud, collusion and the like, the protection offered to the proposed intervenors by the public hearing falls far short of relief CT Page 10367 afforded by intervention.
A quick review of some of the precedent may be helpful. In Bucky v.Zoning Board of Appeals, 33 Conn. Sup. 606 (1976), intervention sought by an abutting property owner was ordered. Few of the details are reported in the case, and the case is of limited value for the purpose of our analysis because it predates the availability of a hearing pursuant to § 8-8 (m). The facts of Centennial Development, Inc. v. Town ofFarmington, supra, appear to be somewhat analogous to those in our case. At the time Judge Berger decided the issue before him, Judge Maloney had already allowed intervention, and there is no discussion of Judge Maloney's rationale in Judge Berger's decision, nor was there reason for such discussion. Judge Berger simply decided that there could be no settlement if any parties, including those who had already intervened, objected. Judge Berger's decision is useful for us to the extent that it states, based on a review of legislative history, that the purpose of the § 8-8 (m) hearing is to provide judicial oversight to protect against abuse, fraud or collusion between the parties in a land use appeal.
The Superior Court case which on its face is most favorable to the position of the existing parties is Mead School for Human Development v.City of Stamford, 18 CLR 260 (1996) (Karazin, J.). Here, the local authorities had granted the school's application with restrictions, and the school had appealed. The parties reached agreement, but, before the agreement was approved at a hearing, abutting property owners sought to intervene as parties. Intervention was denied for two reasons. One was the availability of a § 8-8 (m) hearing. The second was the pendency of a companion appeal in which the proposed intervenors were in fact parties, and thus could protect their interests in the other action. Were it not for the pendency of the other appeal, Mead School would present much like the instant case, but the existence of the other appeal significantly reduces the persuasive effect of Mead School upon this case.
Chrysalis Center, Inc. v. City of Hartford Zoning Board of Appeals,1994 Ct. Sup. 3998 (1994) (Maloney, J.) is a brief but tantalizing decision. Judge Maloney dismissed from the appeal a party who once was aggrieved but no longer was. Judge Maloney mentioned that the dismissed party's interests could be protected to a degree by the § 8-8 (m) hearing.
Finally, there are several cases which hold that a person who is not a party may not appeal from a settlement of a land use appeal. Taking the position that an aggrieved person could appeal from "any decision" of the planning commission, the appellants in Brookridge District Association, supra, argued that the decision to settle was such a decision. The CT Page 10368 Supreme Court disagreed, and noted that there was tension, as recognized in Sendak, supra, between the legitimate interests in settlement and the need for judicial scrutiny to avoid abuse. The court indicated that the § 8-8 (m) hearing provided such a balance for a person who is not aparty to the action.
The following principles may be distilled from a reading of all of the reported cases in the area. First, the problems presented by the settlement of land use appeals on terms different from those forming the basis of the initially appealable decision have vexed the courts for years. The potential for abuse is obvious: in an extreme situation, the public authority and the applicant could presumably agree, expressly or otherwise, to approval of an application with very restrictive limitations. The neighbors, or others either statutorily or classically aggrieved, would have no reason to appeal. While the appeal taken by the applicant was pending, the rest of the plan would be implemented: the appeal would be settled on terms most favorable to the applicant, and it would be too late for the neighbors or others to respond. The legislature responded to this scenario by enacting the requirement of the public court hearing. It seems clear, however, that the role of the hearing is only to protect against abuses of the process and the court is limited to such considerations. The hearing does not, consistent with the language of cases such as Brookridge and Centennial, protect against good faith changes in position.
Second, it is clear that many cases have fairly routinely allowed intervention where the intervenors enjoy a status similar to aggrievement[3] but have not allowed appeals by nonparties. The lesson is that persons can fully protect their interests only by becoming parties, if possible. If a person is already a party in a companion case, there is no compelling reason to grant party status, because those person's interests are already reasonably protected. While the § 8-8 (m) hearing does provide a safeguard to the public against abuse, it does not fully protect an aggrieved person's interest in maintaining the original decision, because the hearing does not protect against the good faith changing of position. There are a myriad of situations in which a successful appeal could lie from a decision which nonetheless was made in good faith.
Finally, the thread of a desire to promote fairness — a most subjective element — permeates the case law. Intervention is indeed cumbersome and most unwelcome to existing parties who, as in this case, have gone to great lengths to resolve a controversy on terms which they believe are fair.[4] There are obviously public and private values in bringing disputes to a close. There is also, however, an inherent unfairness to a process which would exclude from fully meaningful review CT Page 10369 abutters who could have appealed from a decision of the public body had the settlement been the initial decision. See Tondro, Connecticut Land Use Regulation, 2d Edition, 557-60 (1992).
Consideration of all factors leads to the conclusion that intervention should be allowed in the circumstances of this case. I do not believe that the § 8-8 (m) hearing provides protection against other than bad faith issues. By allowing intervention, I am of course not suggesting any opinion as to what might be a wise resolution of the dispute on the merits, nor do I intend to suggest that the local authorities have done anything other than honestly and legitimately try to reach an equitable resolution. If the compromise forming the basis of the proposed settlement had been adopted at the stage of proceedings usually contemplated for such decisions, i.e., the local level rather than the appellate level, the issue of permissive intervention would presumably have been avoided altogether.
The motion to intervene is granted.
BEACH, JUDGE.